## COLUMBIA AUTO LOAN, Inc. v. JORDAN.

### No. 10901.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 19, 1951.

Decided Feb. 21, 1952.

Bernard Margolius, Washington, D. C., for appellant.

Chester H. Gray, Principal Asst. Corporation Counsel for the District of Columbia, Washington, D. C., with whom Vernon E. West, Corporation Counsel, and Oliver Gasch, Asst. Corporation Counsel, Washington, D. C., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER, and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Columbia Auto Loan, Inc., did business in the District of Columbia as a policy-writing agent for an insurance company, under license from the Superintendent of Insurance. When the license expired, on April 30, 1950, renewal was refused by the Superintendent. Columbia Auto Loan thereupon brought suit in the United States District Court for the District of Columbia to review the action of the Superintendent and to secure an order requiring him to grant renewal. A trial *de novo* was held and at its conclusion judgment was entered in favor of the Superintendent, denying relief. This appeal followed. The questions presented involve matters of procedure and of substance.

As grounds for reversal appellant first contends that it was entited to a formal hearing before the Superintendent, but was accorded only an informal conference with him and the opportunity to file written statements. The Superintendent's action in denying renewal is alleged on that account to be invalid. Secondly, appellant attacks the subsequent judicial proceedings on the theory that the court should not have held a trial *de novo* covering issues more extensive than those with which the Superintendent had dealt. It is urged that review should have been limited to a determination of the question whether the Superintendent acted upon a legally sufficient basis.

I.

With regard to the first contention, the licensing statute itself does not make a hearing by the Superintendent a prerequisite to non-renewal. It gives the Superintendent power to revoke, suspend, or refuse to renew a license after an investiga-

tion, and requires a hearing prior to an exercise of that power only in cases of suspension and revocation.[1] See Jordan v. American Eagle Fire Ins. Co., 83 U.S. App.D.C. 192, 198, 169 F.2d 281, 287. But since appellant was conducting a going business under license, the Constitution entitled it to a due process hearing in regard to non-renewal. See In re Carter, 89 U.S. App.D.C. 310, 192 F.2d 15; same case on rehearing, 89 U.S.App.D.C. 320, 192 F.2d 25, certiorari denied 72 S.Ct. 89, 342 U.S. 862, and cases cited in the concurring opinion of Judge Miller, 89 U.S.App.D.C. 320–324, 192 F.2d 25–29. This, however, is not to say that the requisite hearing must always precede the taking of administrative action.

The statute we are considering permits the licensee to "contest the validity of [the Superintendent's order] in any court of competent jurisdiction by appeal or through any other appropriate proceedings."[2] In Jordan v. American Eagle Fire Ins. Co., supra, 83 U.S.App.D.C. 192, 198, 169 F.2d 281, we said, through Judge Prettyman, that this meant the administrative action might be challenged "in any or every respect in which the order might be invalid. That includes the right to explore the evidence upon which the Superintendent acted, and the reasons and calculations upon which he reached his conclusions. * * * [This means] a complete right to a full hearing de novo * * *." 83 U.S.App.D.C. at pages 200–201, 169 F.2d at pages 289–290. Thus, while no hearing precedes the non-re-

newal order, its validity is subsequently subject to the broadest sort of judicial inquiry.

Licensing statutes of this type provide the essentials of due process. Hall v. Geiger-Jones Co., 242 U.S. 539, 37 S.Ct. 217, 61 L.Ed. 480; Bourjois, Inc. v. Chapman, 301 U.S. 183, 57 S.Ct. 691, 81 L.Ed. 1027. In the case last cited, a Maine statute required the registration of cosmetic preparations by the manufacturers or proprietors, and empowered a state agency to issue or deny, under described standards, certificates of registration of such preparations. The Supreme Court, by Mr. Justice Brandeis, concluded that the Federal Constitution did not require that "there must be a hearing of the applicant before the board may exercise a judgment under the circumstances and of the character here involved", and that "the requirement of due process of law is amply safeguarded by Section 2 of the statute," providing for judicial review.[3] 301 U.S. at page 189, 57 S.Ct. at page 695. See also Phillips v. Commissioner, 1931, 283 U.S. 589, 597, 51 S.Ct. 608, 75 L.Ed. 1289; Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892.

This court has made a like holding with respect to the rate-making provisions of the statute we are now considering. In Jordan v. American Eagle Fire Ins. Co., supra, we said: "[The insurance] statute did not require a quasi-judicial hearing by the Superintendent. It prescribed an investigative, or legislative, process only. * * * But we do not think that the [Superin-

---

1. The pertinent legislation is found in sections 1340 and 1349 of Title 35 of the D. C.Code, providing in part:

§ 1340. "The Superintendent may revoke, suspend, or *refuse to renew the license* of any policy-writing agent, soliciting agent, broker, or salaried company employee when and if, *after investigation,* it appears conclusively to the Superintendent that any license issued to such person was obtained by fraud or misrepresentation, or that such person has—

"(a) Violated any of the provisions of the insurance laws of the District; or
* * * * *
"Before the superintendent shall revoke or suspend the license of any such person he shall give to such person an opportunity to be fully heard, and to introduce evidence in his behalf."

§ 1349. "Any person affected by an order, ruling, proceeding, or action of the superintendent * * * may contest the validity of the same in any court of competent jurisdiction by appeal or through any other appropriate proceedings." (Emphasis added)

2. Section 1349, supra, note 1.

3. The section, as quoted by the Court, read: "From the refusal of said department to issue a certificate of registration for any cosmetic preparation appeal shall lie to the superior court in the county of Kennebec or any other county in the state from which the same was offered for registration." 301 U.S. at page 189, 57 S.Ct. at page 695.

tendent's rate-making] order was invalid merely because it was not preceded by a quasi-judicial hearing. * * * [W]here the requisite due process hearing is not included in the legislative or administrative process, it may be adequately supplied by a judicial proceeding in which new evidence may be supplied and full opportunity afforded for exploration of the bases of the disputed order." 83 U.S.App.D.C. at pages 198, 200, 169 F.2d at pages 287, 289. We consider that the statutory system held constitutional in the American Eagle case in respect of rate-fixing is equally valid in respect of the Superintendent's licensing function.[4]

## II.

■ Appellant's second contention is that the District Court erred in conducting a *de novo* trial which explored ground beyond that on which the Superintendent rested his refusal to renew. Certainly, however, the statute suggests no such limitation on the breadth of the judicial inquiry. As already noted, it provides for "appeals" and any other "appropriate proceedings" to test the Superintendent's action, and to test it in any and all respects. If appellant had specified that he was bringing an "appeal," there might be a basis for his claim that the proceedings should have been restricted to "a determination of whether the action of the Superintendent

in refusing the license was proper and valid in light of what was before him at the time he acted." (Br., p. 6.) But appellant chose instead to frame his complaint broadly and seek the fullest measure of relief. He requested that "the action and order of the Superintendent of Insurance be reviewed by this Court and be set aside as contrary to law and fact," and that the court compel the Superintendent "to grant to the plaintiff its application for a renewal of its insurance license and to issue said license to the plaintiff as required by law." Relief *pendente lite*, as well as "other and further relief," was also asked.

■ We think that the nature of the relief prayed—an order compelling renewal—required the trial court to inquire beyond the limits urged by appellant. Proceedings of the present sort are equitable in nature. A court of equity will not use its power to produce a result contrary to public policy, and it is entitled to hear all evidence bearing on the possible consequences of its action. See United States ex rel. Greathouse v. Dern, 289 U.S. 352, 359, 53 S.Ct. 614, 77 L.Ed. 1250. It is entitled, that is, to hear all evidence relevant to the ultimate issue—namely, whether or not the complainant is entitled to the relief sought.[5] If the Superintendent acted on the basis of facts A and B, and complainant contends that those facts were insufficient to warrant

---

4. We added in the American Eagle case that an insurance company complaining of the confiscatory character of a newly established insurance rate was entitled, "as a necessary incident to this type of procedure, to have, upon proper preliminary showing, a stay, by way of interlocutory injunction, of the enforcement of the order pendente lite * * *." 83 U.S.App.D.C. at page 202, 169 F.2d at page 291. That statement, as to rate-fixing orders, is supported and illustrated by such cases as Prendergast v. N. Y. Tel. Co., 1923, 262 U.S. 43, 49, 43 S.Ct. 466, 67 L.Ed. 853. As to proceedings involving licenses, we need not for present purposes spell out the precise application of the general principle, for appellant has not complained of the District Court's failure to stay the Superintendent's order *pendente lite*. It is enough to say that the need for protecting a property right in a going business must on occasion be

balanced, in the light of the governing statute and of the circumstances presented, against the need for protecting the public against some imminent danger. See, generally, Davis, Administrative Law 260–264 (1951); 65 Harv.L.Rev. 508 (1952). Cf. Administrative Procedure Act, §§ 9(b), 10(d), 5 U.S.C.A. §§ 1008 (b), 1009(d). See also Yakus v. United States, 321 U.S. 414, at pages 440–442, 64 S.Ct. 660, 88 L.Ed. 834; Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030.

5. In view of our holding in the present case, we need not here consider under what circumstances the courts can or will compel the issuance of a license. See, generally, Perkins v. Elg, 307 U.S. 325, 349–350, 59 S.Ct. 884, 83 L.Ed. 1320; Ma-King Co. v. Blair, 271 U.S. 479, 483, 46 S.Ct. 544, 70 L.Ed. 1046; Matter of Larkin Co. v. Schwab, 242 N.Y. 330, 151 N.E. 637.

denial of a license, the Superintendent is not barred (assuming that the requirements of fair play and applicable procedure have been satisfied) from proving the existence of facts C and D, which in themselves or in conjunction with the other facts would support the Superintendent's action. To exclude such evidence would lead to the conclusion that the court could and should compel the Superintendent to issue a license even though facts C and D, not relied upon by him or perhaps then unknown to him, have since been established and are of such a nature that in the face of them the issuance of a license would be contrary to the public interest and to the provisions of the statute. Such a theory is manifestly untenable.

There is another fundamental reason why the trial court was correct in overruling appellant's contention on this point. There was no record for the court to review. How then could it decide an appeal involving disputed issues of fact, on evidence that was "unknown and unknowable"? [6] What appellant seems to have had in mind was a procedure whereby the court would hold a hearing, at which the Superintendent could be subjected to cross-examination, but where he would be allowed to produce only such evidence as pertained to the matters about which he had previously advised the applicant on an informal basis. Appellant has cited no case to us in which such a procedure was adopted or sanctioned, and we ourselves know of none. No reason appears why it was improper for the District Court to adopt the procedure we sanctioned under closely parallel circumstances in the American Eagle decision: a trial *de novo* with wide scope of inquiry.

We conclude that appellant cannot complain of the procedures adopted before the Superintendent and the District Court.

## III.

A further contention made by appellant is based on section 1339 of Title 35 of the D.C.Code, which provides: "Renewal of all expiring licenses shall be issued by the Superintendent upon application in writing by the applicant for any such license, subject to the conditions of section 35–1340, and subject also to the provisions for examination as set forth in section 35–1336, upon payment of the applicable fee prescribed in section 35–1345."

Appellant contends that under the quoted statute the Superintendent is required to renew an expiring license unless the applicant can be brought squarely within one of the disqualifying categories set forth in section 1340, and that it is not sufficient for the Superintendent simply to find the applicant unqualified to receive an original license under the provisions of section 1336 of Title 35. The latter section requires, among other things, that the applicant be competent and trustworthy and that the Superintendent be satisfied of that fact, and appellant says that it was solely for failure to meet this requirement that renewal was denied by the Superintendent.

We find it unnecessary to reach this contention of the appellant. During the trial, evidence was produced by the Superintendent which led the District Court to reach the following conclusion of law (among others): "9. The Court, hearing this case de novo and based upon the evidence adduced therein, concludes that the plaintiff violated the insurance laws of the District (a) in that it failed to furnish to insureds policies or comparable evidence of insurance to which said insureds were entitled as required by Section 35–1507(d), D.C. Code, 1940, Supplement VII, and (b) in that plaintiff did represent that it had authority to solicit, effect and procure policies

6. See Mr. Justice Cardozo's opinion in Ohio Bell Tel. Co. v. Public Utilities Comm'n, 1937, 301 U.S. 292, 303, 57 S.Ct. 724, 81 L.Ed. 1093, quoted in Jordan v. American Eagle Fire Ins. Co., 83 U.S. App.D.C. 192, 197, 169 F.2d 281, 286. In such a situation, the court could perhaps have remanded the case to the Superintendent with directions to hold a judicial hearing and preserve the record of testimony. But that course does not appear to have been urged by appellant; nor does it appear to be contemplated by the statute, since the Superintendent lacks power (of subpoena and the like) necessary to conduct a quasi-judicial hearing on the renewal of a license. See D.C.Code § 35–1508 (Supp. VII); Jordan v. American Eagle Fire Ins. Co., 83 U.S.App.D.C. at page 198, 169 F.2d at page 287.

of insurance when it had no license so to do."

Findings of fact were also made by the District Court of a nature to support the conclusion thus expressed—findings which are amply based on the evidence. Appellant· does not seriously challenge the substance of the court's findings of fact on this point, nor does it present to us any legal basis for impugning the validity of the court's conclusion of law that violations of the insurance statutes had been committed. Violations of those laws are expressly made by section 1340 a ground for refusal by the Superintendent of a renewal license.[7] Under these circumstances, we must affirm the judgment of the District Court, whether the Superintendent based his order on this or another ground. The business conduct of the appellant, as shown by the evidence supporting the findings, was such as to justify a conclusion not only that the appellant was not competent and trustworthy, but also that its violations of the insurance laws had deprived it of any claim to a renewal of its license or to the assistance of a court of equity.

We do not think it would serve any useful purpose to canvass the remaining contentions of the parties. For the reason stated, the judgment of the District Court will be affirmed.