**ATLANTIC INSURANCE AGENCY, Inc., a Corporation, et al., Appellants,**

v.

**Albert F. JORDAN, Superintendent of Insurance of the District of Columbia, Appellee.**

**No. 12486.**

United States Court of Appeals District of Columbia Circuit.

Argued April 21, 1955.

Decided Nov. 17, 1955.

Petition for Rehearing In Banc Denied Dec. 15, 1955.

Mr. Bernard Margolius, Washington, D. C., for appellants.

Messrs. Carleton U. Edwards, II, and Ralph H. Deckelbaum, Washington, D. C., also entered appearances for appellants.

Mr. Milton D. Korman, Asst. Corp. Counsel for the District of Columbia, with whom Messrs. Vernon E. West, Corp. Counsel, Chester H. Gray, Principal Asst. Corp. Counsel, Harry L. Walker and Lyman J. Umstead, Asst. Corp. Counsels, were on the brief, for appellee.

Before PRETTYMAN, WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

Atlantic Insurance Agency, Inc., (hereinafter called Atlantic) and S. F.

and G., Inc., vainly sought summary judgment in their joint action to compel the Superintendent of Insurance to renew their respective 1955 licenses as insurance broker. The District Court granted the Superintendent's motion and dismissed the complaint. The appeal presents a problem in the application of certain sections of the District of Columbia Code to the facts as stipulated before the Superintendent at a consolidated hearing, the record of which was attached to and made part of the complaint.

It appears that Atlantic was organized in August 1950, and that year received its license as broker. Each year its license was renewed until 1954. So with S. F. and G., Inc., organized in March 1949, which in 1951 applied for and received a broker's license, annually renewed until 1954, when the Superintendent served notice on both companies that he was not "satisfied that you are trustworthy, or that you intend to act in good faith in the capacity involved by the license applied for, or that you are worthy of a license."[1]

In 1954 the Superintendent changed the renewal application forms, for the first time requiring information as to the stock ownership of corporate applicants. Upon learning from such sources "that Atlantic Insurance Agency, Inc., is under the control of S. F. and G., Inc., which in turn is controlled by the same S. Dewey Gottlieb who was president and controlling stockholder of Columbia Auto Loan, Inc.," the Superintendent refused to grant the renewals. His present position may be restated thus: that he would not have issued the original 1950 and 1951 licenses to the appellants, had he then known of Gottlieb's interest in S. F. and G., Inc., which, in turn, controls Atlantic, because a different corporation controlled by Gottlieb in 1950 had run afoul of the law.

D.C.Code, § 35–1339 (1951) provides: "Renewal of all expiring licenses shall be issued by the Superintendent upon application in writing by the applicant for any such license, subject to the conditions of section 35–1340, and subject also to the provisions for examination as set forth in section 35–1336. . . .."[2]

---

1. His letter to each appellant read as follows:

"Gentlemen:

"Consideration is being given to your application for a license.

"Section 35–1336, D.C.Code, 1951 edition, provides that the Superintendent of Insurance shall issue such a license when he is satisfied that the applicant is trustworthy, will act in good faith in the capacity involved by the license applied for, and is worthy of a license.

"It appears that Atlantic Insurance Agency, Inc., is under the control of S. F. and G., Inc., which in turn is controlled by the same S. Dewey Gottlieb who was president and controlling stockholder of Columbia Auto Loan, Inc. In the case of Columbia Auto Loan, Inc., v. Jordan, decided September 21, 1950, the United States District Court for the District of Columbia held as conclusions of law that:

" 'The plaintiff used the insurance license previously issued to it in a manner contrary to the public interest and contrary to law by treating insurance as a device for cheating its customers by charging them for insurance without furnishing the customers either the policies or the protection for which they were paying. * * *

" 'On the basis of the evidence adduced before it, the Court concludes that the plaintiff as represented before it by its president and controlling stockholder, is not trustworthy, is not worthy of an insurance license, and would not act in good faith in the capacity of an insurance agent.'

"In view of the foregoing facts, I am not satisfied that you are trustworthy, or that you intend to act in good faith in the capacity involved by the license applied for, or that you are worthy of a license.

"At your request, in writing, within ten days from this date, an opportunity will be given to you to appear in this office and present any evidence or argument which you may have tending to show that your license should be issued, notwithstanding the facts herein cited."

2. In ruling on the crossmotions for summary judgment, the District judge pardonably understated: "When we turn

D.C.Code, § 35–1340 (1951) provides in pertinent part:

"The Superintendent may revoke, suspend, or refuse to renew the license of any policy-writing agent, soliciting agent, broker, or salaried company employee when and if, after investigation, it appears conclusively to the Superintendent that any license issued to such person was obtained by fraud or misrepresentation, or that such person has —(a) Violated any of the provisions of the insurance laws of the District; or . . .." has been guilty of any of a series of enumerated, proscribed acts.

The Superintendent made no claim that either corporate appellant had been guilty of any improper insurance practice or had violated any of the specific proscriptions. There was no suggestion that either obtained its license by fraud or misrepresentation or that either failed in any prior year to supply whatever information was then required by the Superintendent. The latter did not say that it appeared to him "conclusively," as is required by § 35–1340, that there had been established a predicate, spelled out from that section, for a refusal to renew. The Superintendent must have realized, accordingly, that § 35–1339 provided that renewal was required unless language in the latter section reading "subject also to the provisions for examination as set forth in section 35–1336 . . .." in 1954 could be related back to 1950 and 1951.[3]

In short, he would now argue that his authority to refuse to *renew* and the considerations to govern his action are the same, and to be exercised for the same reasons, as his authority to deny an original application. Congress has not gone that far, and however desirable it may be for the Superintendent to be empowered to act at all times in the public interest in the insurance field, neither the Superintendent nor the courts may supply powers which the Congress has never conferred.

Justice Holmes made the point in Gegiow v. Uhl, 1915, 239 U.S. 3, 9, 36 S.Ct. 2, 60 L.Ed. 114, noted otherwise in Waite v. Macy, 1918, 246 U.S. 606, 610, 38 S.Ct. 395, 62 L.Ed. 892; Interstate Commerce Comm. v. Nor. Pac. Ry., 1910, 216 U.S. 538, 544–545, 30 S.Ct. 417, 54 L.Ed. 608; Proctor & Gamble Co. v. Coe, 1938, 68 App.D.C. 246, 249–250, 96 F.2d 518, 521–522, certiorari denied, 1938, 305 U.S. 604, 59 S.Ct. 65, 83 L.Ed. 384, that when an administrator is specifically authorized to act under particular and enumerated conditions, his authority is limited to the granted circumstances; indeed spelling out the respects in which he may act is tantamount to a denial of his right to an exercise of his power in non-specified particulars.

It is clear enough that the provisions of D.C.Code § 35–1336 (1951) govern an original application for a license to be issued, either to an individual policy-writing agent, soliciting agent, salaried company employee, or resident broker, or to a corporation which will act through such personnel. Each such person shall be subjected "to a personal written examination relating to such person's knowledge of the kind or kinds of business to which the license may extend and his competency to act" in the capacity for which the license is sought. To the extent that a corporation is to act, not the corporate entity but its personnel who will actually perform the functions in the status named are to be examined. The scheme of the statute contemplates that when capacity of the individual personnel has been demonstrated by the "personal written examination," the Superintendent must satisfy himself that the person to be licensed qualifies, as to trustworthiness and otherwise, whereupon he "shall is-

---

to the pertinent statutes we must come to the conclusion that they are not as felicitously and artistically drafted, or as clear, as might be wished."

3. See his letter, supra note 1.

sue such license as may be applied for." [4] If a license is to be issued to a corporation, the names of the individual, competent, qualified personnel must appear thereon if they are to solicit insurance or countersign policies. § 35–1336 expressly provides that "no officer or employee of such organizations *other than those specifically named in such license* shall be required to comply *with this section,* unless the duties of such officers or employees include *soliciting* or the *countersigning of policies."* (Emphasis supplied.) It was specifically stipulated here that neither corporate appellant had listed the name of S. Dewey Gottlieb as an officer or employee who solicits insurance or who countersigns policies, indeed it was agreed that he was not an officer of either company.

Our present problem, then, involves § 1340, governing revocations, suspensions, and refusals to renew, not § 1336 which governs, except as specified in note 4, *original-issue* licenses. Section 1340 says nothing whatever about "lack of trustworthiness," as a ground for refusal to renew. It requires a finding after investigation that "it appears conclusively to the Superintendent" that the original license, or a renewal thereof, "was obtained by fraud or misrepresentation" or that any of several named grounds exist for such refusal to renew. A renewal, after all, differs in many ways from an original grant. Property rights have become vested. See Columbia Auto Loan v. Jordan, 1952, 90 U.S. App.D.C. 222, 223, 196 F.2d 568, 570, citing, In re Carter, 1951, 89 U.S.App. D.C. 310, 192 F.2d 15; same case on re-

hearing, 89 U.S.App.D.C. 320, 192 F.2d 25, certiorari denied, 1951, 342 U.S: 862, 72 S.Ct. 89, 96 L.Ed. 648, and especially cases cited in Judge Miller's concurring opinion, 89 U.S.App.D.C. 320–324, 192 F.2d 25–29.

■ The Superintendent really has asked us to read the statute as though it authorizes him to deny renewal to a corporation which in every respect has originally been found by him to be qualified under and to have complied with the statutes if it should later develop that an ownership interest in the corporation shall have been acquired by a *person* deemed by the Superintendent to be untrustworthy. Perhaps Congress should have said that much; the plain fact is that it did not do so. The Superintendent must be held to his statutory authority.

The judgment of the District Court is reversed, and the case is remanded for further proceedings in accordance with this opinion.

PRETTYMAN, Circuit Judge (dissenting).

I would affirm in this case. It presents a close question, but I am unable to resolve my disagreement with my brethren.

The controversy concerns the renewal of a license held by a corporation, authorizing it to act as an insurance broker. Licenses are issued for one year.[1] The controlling statute [2] provides that renewals shall be subject to "the provisions for examination as set forth in section 35–1336". The latter section

---

4. In the case of a corporation, the Superintendent when passing upon an original application, must satisfy himself that the corporation is trustworthy, taking into account such factors as its financial solvency, its standing with tax authorities, its relationship with the insurance companies it will represent, their standing to do business in the District, and similar criteria upon which his judgment may be based. Once the Superintendent shall have found the corporation trustworthy and shall have issued a license under § 1336, the presumption

of trustworthiness continues. But the corporation's license renewal application shall be "subject to the conditions of section 35–1340," and its named personnel shall be subject to the written examination provision set forth in § 1336. This is the plain meaning of § 1339.

1. 54 Stat. 1079 (1940), D.C.Code § 35–1337 (1951).

2. 54 Stat. 1079 (1940), D.C.Code § 35–1339 (1951).

sets forth the conditions for the issuance of a license. The meaning of these two sections, read together, is the issue here.

The issue resolves into three problems. The first, in logical order, is the place of the examination provisions in the scheme of the original-issuance section. The second is the application of the original-issuance provisions to a corporation. The third problem is the meaning of the renewal section when it adopts by reference "the provisions for examination" in the original-issuance section.

The original-license section of the statute, condensed, provides that before issuing a license to an agent or broker the Superintendent shall subject each "such person" to a personal written examination relating to the person's knowledge of the business and his competency to act as a licensee. Then the statute provides that "Following such examination" the Superintendent shall issue the license "when he is satisfied" the applicant is "(a) competent and trustworthy and intends to act in good faith", with a provision as to commission income; and "(b) that he has a good business reputation and has had experience, training, or education, or is otherwise qualified * * *"; and (c) is reasonably familiar with insurance laws and regulations. Quite obviously part of the required findings by the Superintendent can be derived from the personal written examination; such, for example, as the reasonable knowledge of the law. But equally obviously other parts of the findings cannot be so derived. A person's trustworthiness, intended good faith, and business reputation cannot be gleaned from a personal written examination. Other inquiry is necessary. The statute says the Superintendent shall issue the license "when he is satisfied" as to trustworthiness, competency, and good faith. Perhaps he could be satisfied as to knowledge and some phases of competency by a written examination, but he could hardly be satisfied as to trustworthiness and good faith by this means alone. Obviously other inquiry is permitted.

As a matter of structure of the statute these examination provisions are not set up as a separate, distinct step in a series of separate steps; they are integrated into the text dealing with qualifications. If Congress had meant to provide a series of independent steps in the process of securing a license, it could have done so. It did not so construct this statute. The examination provisions are not even fairly separable from the rest.

It seems to me perfectly clear that the personal written examination is a phase of the qualification process and that it has no purpose or result except as part of the material upon which the Superintendent bases his conclusion of trustworthiness and competency.

The next question is whether the Superintendent may consider the trustworthiness of the controlling shareholder of a corporation in determining the trustworthiness of the corporation itself. Section 35–1336 of the Code provides that licenses may be issued in the name of a corporation. It further provides that the Superintendent shall issue a license when he is satisfied "the person to be licensed" is, among other things, "competent and trustworthy". The statute defines "Person" to include a corporation.[3] So the Superintendent must be satisfied that a corporation is "trustworthy" before he issues it a license. That a corporation cannot take a personal written examination is no reason for concluding that it cannot be found trustworthy. The Federal Communications Commission, for example, is constantly considering the probabilities that a corporation will fulfill its promises. Illustrations could be multiplied. And the statute now before us requires that the person to be licensed be found trustworthy. This finding in turn obviously depends on the trustworthiness of the principal shareholders

3. 54 Stat. 1064 (1940), D.C.Code § 35–1303 (1951).

of the corporation, where they are in actual control of its operation. This is the usual method of determining the character and ability of a corporation. Sometimes the character of the management determines the character of the corporation; certainly in the case of a closely held or small corporation the character of the owners tells the corporate character.

The complicating feature is the proviso pointed out by my brethren—the provision that only those officers or members of a firm who solicit insurance or countersign policies need be listed on its license and that no others "shall be required to comply with this section".

The prime object of Section 35–1336 is to protect the public. There is no reason why both the corporate licensee and its individual agents should not be found competent and trustworthy. The two requirements do not conflict; they go hand in hand. Both the responsible licensee and those who are active for it in its dealings with the public are covered by the Act. Since this result is important in the public interest, and since it is clearly consonant with the purpose of the statute, the language of the Act ought to be so read if it reasonably can be. I think it can. The quoted clause can be read to mean that among the individual agents and employees of a corporate licensee only those named in the application need comply with the requirements. It need not be read as negating the whole qualification process as respects the licensee itself. The trustworthiness of the licensee must be established even though not all its agents and employees (but only its listed ones) can qualify. The statute should be read in the order in which it is written. First, the licensee must be found qualified. Second, those individuals who solicit or countersign policies must be found qualified. Third, if these latter individuals qualify, no other individuals need do so. The last step should not be

carried backward so as to nullify the first.

The next question is the meaning of the renewal section. Section 35–1339 provides that renewals shall be subject "to the provisions for examination as set forth in section 35–1336". The latter section is the original-issuance section. I think the "provisions for examination" include the provision for a finding of trustworthiness. I think we said so in Columbia Auto Loan v. Jordan.[4] To be sure, it was *dictum* there, but in my view it was sound. In any event such a construction is both reasonable and practicable. The "provisions for examination" certainly include the finding of trustworthiness on the part of individual licensees and individual agents of corporate licensees. Such a finding is the only purpose of the examination. If no such finding is required, the examination is an empty gesture, a proceeding hanging in mid-air. If a finding as to the trustworthiness of an individual licensee is required upon a renewal of his license, the same requirement ought to apply to a corporate licensee. I think it does.

These licenses expire each year and must be renewed annually. The renewal section does not make too much sense if it is read to require a re-submission to personal examination but no re-finding as to trustworthiness. If a licensee has sufficient knowledge of the insurance laws this year, he will have equal or greater knowledge next year and the years following. It is in his character, his reputation, or his trustworthiness that change may occur or new facets be discovered.

If renewals be equated with suspension or revocation it is difficult to ascertain any substantial purpose in providing that licenses shall expire annually. Certainly there could have been no intention of requiring renewals year after year, ignoring the record and reputation established by an existing licensee so long as he successfully avoids the

4. 1952, 90 U.S.App.D.C. 222, 226, 196 F.2d 568, 572.

limited prohibitions which are the basis for suspension or revocation of an existing annual license. So to hold is to ignore the strong public policy evident in the Act.[5] This policy is not served by a requirement, without more, that all applicants, however experienced, must annually take a new written examination. Nor is it served by subjecting the public to untrustworthy firms or individuals for whatever length of time they see fit to apply for licenses. Congress cannot be presumed to have intended to limit the protection of the public in so substantial a fashion. I think the examination of which the renewal section speaks is an examination of an applicant's qualifications, the criteria for which are clearly set forth in Section 35–1336.

It seems to me my brethren read this statute to provide that the trustworthiness of an agent is sufficient protection to the public, even where the corporate principal is wholly unreliable. They seem to hold that a corporation can secure a license simply by designating several minor officials or "members" to solicit and countersign policies and by showing that these—and these alone—are competent and trustworthy. I cannot subscribe to such a result.

In sum, it is my view that the original-issuance section (Section 35–1336) is an integrated whole, including the personal examination provisions; that a corporate licensee must be found to be trustworthy and of good faith and the character of the owners, at least of a small corporation like this one, is a material factor in that determination; and that the renewal provisions refer to and incorporate the whole of the qualification process and the phrase "provisions for examination as set forth in section 35–1336" means just that.

---

5. The House Report (No. 9722, 76th Cong., 3d Sess. (1940) indicated that the principal purpose of the Fire and Casualty Act was to secure higher standards for the protection of the public. These standards were thought comparable to those of the Life Insurance Act and the regulatory statutes of New York, Virginia, Illinois, and other states not specifically named. Under the Life Insurance Act, in the case of solicitors or agents, renewals may be had in the absence of "a contrary ruling by the superintendent". 48 Stat. 1139 (1934), D. C.Code § 35–425 (1951). That Act also provides that suspensions and revocations may be predicated upon the untrustworthiness of the licensee. 48 Stat. 1140 (1934), as amended, D.C.Code § 35–426 (1951).