**Dwight BOONE, individually and on behalf of all others similarly situated, by his next friend Walter Boone, Plaintiff,**

**v.**

**George K. WYMAN, as Commissioner of the Department of Social Services of the State of New York; Jack Goldberg, as Commissioner of the Department of Social Services of the City of New York; Elizabeth C. Geine, as Director of the Bureau of Child Welfare of the City of New York; and Winnie Siegel, as Caseworker of the Bureau of Child Welfare of the City of New York, Defendants.**

**No. 68 Civ. 3754.**

United States District Court
S. D. New York.
Jan. 13, 1969.

Harold J. Rothwax, New York City, for plaintiff Mobilization for Youth; Jonathan Weiss, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of the State of New York for defendant Wyman, by Amy Juviler, Asst. Atty. Gen., New York City.

J. Lee Rankin, Corp. Counsel, New York City, for defendants Goldberg, Geine and Siegel; John J. Loflin, Jr., and James Nespole, New York City, of counsel.

MANSFIELD, District Judge.

This is a purported class action by plaintiff Dwight Boone (suing in *forma pauperis* by his father pursuant to order of this Court) (1) for a declaratory judgment that enforcement of certain New York State statutes by defendants denies due process, (2) for an injunction restraining further enforcement of these statutes, and (3) for the convening of a three-judge court pursuant to Title 28 U.S.C. §§ 2282 and 2284. Plaintiff has also moved for preliminary injunctive relief pursuant to Rule 65, F.R.Civ.P., and defendants have moved to dismiss the complaint pursuant to Rule 12(b)(1), F.R.C.P., for lack of jurisdiction over the subject matter.

Plaintiff Boone, approximately 17 years of age, asserts that he is the father of an illegitimate child, Lawrence Brown, born to one Gwendolyn Brown, age 16 on May 6, 1968. On June 5, 1968 the young mother, then in custody of the infant, voluntarily placed the child in the custody of the Commissioner of Social Services of the City of New York pursuant to written authorization executed by her, which authorized the Commissioner to place the child for foster care with any duly authorized agency as defined in the Social Services Law of the State of New York, McKinney's Consol.Laws, c. 55. The agreement was entered into by the mother voluntarily and with full knowledge of the nature and legal consequences of the instrument. Her reason for executing it was that she was unable to provide for the well-being and maintenance of the infant, since the apartment in which she lived with her mother, 3-year old sister and 10-year old cousin, was too small to accommodate the infant. However, it was anticipated that by the beginning of 1969 the Brown family would move to a larger apartment, at which time the mother would resume custody, the agreement of commitment executed by her having retained her right to return of custody upon her being able to provide for the child's well-being. In the meantime the mother has visited the child and maintained her interest and intent to regain custody.

Prior to the institution of the present action Boone, the putative father, had neither executed an acknowledgment of paternity nor contributed to the support and well-being of the child. On July 30, 1968 his attorney wrote a letter on his behalf to the Department of Social Services requesting custody of the child. When custody was not given to him, he commenced the present action. He personally has neither assets nor income to support the child, but his father and mother, with whom he lives, state that they would support, care for, and raise the child. Plaintiff's claim, broadly stated, is that he has been and is being deprived of his right to custody of the child in a manner that denies due process of law.

One Lourdes Gonzalez, 18-year old mother of an illegitimate child born on June 8, 1966 and presently in the custody of the same City department pursuant to an authorization similar to that executed by Gwendolyn Brown, which Miss Gonzalez executed on June 25, 1966, has moved to intervene. Her child was born at a pre-natal shelter in the New York Infirmary when she was 15 years of age and Edward Justiniano, the acknowledged father, was 14 years old and a student in the eighth grade. She asserts that she was induced to sign the authorization for placement of her child in foster care by a statement by a representative of the Bureau of Child Welfare that she would be given the return of custody when she wanted the child but that she has since been told by a case worker that she cannot regain custody until she marries Justiniano, who will not marry her, and she is being refused custody even though she and her foster parents have adequate facilities to care for the child. These assertions are sharply disputed by defendants who assert that upon her request in January 1967 custody of the child was given to one Carmine Adorno who cared for the child until April 26, 1967, when the child was returned to the New York Foundling Hospital because Miss Adorno could no longer care for it, and that when plaintiff-intervenor again requested custody in September 1967, representatives of the authorized agency, the New York Foundling Hospital, visited plaintiff-intervenor at the apartment where she lives with her foster parents, found her to be very immature and not receiving proper guidance from the latter because of their age (78 years and 62 years, respectively) and physical condition, and that plaintiff-intervenor was unable to provide adequate care for the infant. They recommended that she take a course on child care, but she refused. However

they are working toward discharge of the infant as soon as plaintiff-intervenor can properly care for it.

 Plaintiffs seek to attack the constitutionality of § 383 and § 384 of the Social Services Law. Section 384 provides in pertinent part that:

"The guardianship of the person and the custody of a destitute or dependent child may be committed to an authorized agency * * * by a written instrument which shall be known as a surrender, and signed:

\* \* \* \* \* \*

"(c) * * * if such child is born out of wedlock, by the mother of such child; * * *."

Section 383 provides in part that:

"The parent of a child remanded or committed to an authorized agency shall not be entitled to the custody thereof, except upon consent of the court, public board, commission or official responsible for the commitment of such child, or in pursuance of an order of a court or judicial officer of competent jurisdiction, determining that the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child."

Both parties agree that custody of the children involved has been committed to an authorized agency and that, therefore, the provisions of § 383 are relevant. Examination of the instruments executed by plaintiffs and comparison with the form and procedure used to effectuate a commitment pursuant to § 384, however, reveals that the children were not committed pursuant to § 384, which provides for *permanent* commitment, but pursuant to § 398(5) (a), which empowers certain authorized officials to

"Provide care in a family free or boarding home, in an agency boarding

home or in an institution for any child born out of wedlock * * * when in the judgment of such commissioner of public welfare or public welfare officer needed care cannot be provided in the mother's own home."

It is not clear whether the commitment of the children here was effected pursuant to a state-wide policy in the application of § 398(5) (a) or under local regulations implementing that section.* For present purposes, however, the more significant factor is that the authorization executed by the mothers in custody did not give guardianship rights or permanent custody to the Commissioner of Social Services. Each mother retained the right to regain custody of the child when she was able to provide for its well-being. Under the circumstances plaintiffs have no standing to raise the unconstitutionality of § 384. Alabama State Federation of Labor, et al. v. McAdory et al., 325 U.S. 450, 463, 65 S. Ct. 1384, 89 L.Ed. 1725 (1945).

*The Motion to Intervene*

 Plaintiff-intervenor Gonzalez fails to assert any facts qualifying her for intervention as a matter of right under Rule 24(a), F.R.C.P. It is not contended that disposition of Boone's suit will impair or impede her ability to protect her interest. Her application appears to be based solely on the contention that she is a member of a class represented by Boone, but she does not claim that her interest is not adequately represented by Boone's suit, who is also represented by her counsel. Permissive intervention, however, is also sought pursuant to Rule 24(b) (2), F.R.C.P., on the basis that "an applicant's claim or defense and the main action have a question of law or fact in common."

 The claims of Boone and Gonzalez differ substantially with respect to the allegedly unconstitutional commitment of their children to the custody of

---

* If the commitment was pursuant to local regulations, a three-judge court would not have jurisdiction. Moody v. Flowers, 387

U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

the Commissioner of Welfare. Boone's principal claim is that he was deprived of any notice or opportunity to be heard, while Gonzalez claims that she was induced to execute the commitment instrument on the basis of inadequate advice and misrepresentation. Since these claims erroneously assume that the children were permanently committed under § 384 and are offered in support of an attack on that statute, they would not afford a proper basis for intervention even if their dissimilarities were ignored. Both claims, however, raise substantially the same question of law with respect to the alleged deprivation of due process resulting from the application of § 383. Accordingly Gonzalez' application for permissive intervention is granted.

Although the plaintiffs' mutual interest in attacking the constitutionality of § 383 on the same ground permits intervention pursuant to Rule 24(b), it is doubtful whether the prerequisites for institution of a class action, established by Rule 23(a), exist. For instance, we are not provided with any facts as to how many children born out of wedlock have been committed to the custody of the Commissioner of the Department of Social Services pursuant to § 398(5) of the Social Services Law, and hence cannot conclude that the number is large enough to render joinder impractical. Nor have we been sufficiently acquainted with defendants' procedures in the handling of requests for return of custody to ascertain whether relief here would affect the class as a whole. However, in view of our conclusion that no substantial federal question is presented, the issue of whether this is properly a class action need not be decided.

*Plaintiffs' Motion to Convene a Three-Judge Court and Defendants' Motion to Dismiss the Complaint*

██ The issue before this Court is whether or not the plaintiffs' complaint raises a substantial constitutional question with respect to the enforcement of § 383. If it does, the Court has juris-diction over the subject matter of the suit, and a three-judge court must be convened, but if it does not raise such a question, then the complaint must be dismissed. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); Bell v. Waterfront Commission, 279 F.2d 853 (2d Cir. 1960); Offermann v. Nitkowski, 378 F.2d 22 (2d Cir. 1967).

██ The convening of a three-judge court is not an automatic ritual, particularly when it is realized that Congress' original purpose in enacting the authority to convene such a court, 28 U.S.C. § 2281, was to protect state-wide legislative measures against hastily-issued, crippling ex parte injunctions issued by single district court judges who sometimes acted without benefit of thorough deliberation, Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), rather than to provide an alternative forum with a direct-appeal right to the Supreme Court. Where a constitutional question offered as the basis of federal jurisdiction is so insubstantial that it will not pass muster upon motion to dismiss before a single judge, it fails to meet the requirement for convocation of a three-judge court, which must be strictly construed. Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). Otherwise the three-judge court, direct-appeal procedure would cause a serious and unnecessary drain upon the federal judicial system, Phillips v. United States, 312 U.S. 246, 250, 61 S.Ct. 480, 85 L.Ed. 800 (1941), involving the inclusion of at least one judge from the Court of Appeals, 28 U.S.C. § 2284, and a further direct-appeal burden upon the Supreme Court, United States v. Singer Mfg. Co., 374 U.S. 174, 175 n. 1, 83 S.Ct. 1773, 10 L.Ed.2d 823 (1963).

██ After careful review of the papers in the light of the foregoing basic principles, we conclude that the constitutional question raised by plaintiffs is so wholly devoid of merit as to require that their application be denied and their complaint dismissed for lack of jurisdiction. California Water Service Co. v. City of Redding, 304 U.S. 252, 58 S.Ct.

865, 82 L.Ed. 1323 (1938); Fitzgerald v. Catherwood, 388 F.2d 400 (2d Cir. 1968); Green v. Board of Elections of the City of New York, 380 F.2d 445 (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968); American Commuters Association Inc., et al. v. Levitt et al., 405 F.2d 1148 (2d Cir. 1969).

The substance of plaintiffs' contention with respect to § 383 is that they were denied procedural due process because the officials of the authorized agencies, when a request was made for return of custody, did not hold a hearing or institute an action in a court of law to show unfitness on the part of the parent requesting custody. Plaintiffs' position is summarized in the following allegation of their complaint:

"(a) the Social Services Law of New York, Section 383, on its face and as applied, is in violation of the due process clause of the Fourteenth Amendment to the United States Constitution in that it denies a parent the substantive natural rights to custody of a child on the decision of officials alone without hearing and without instituting any action in a Court of Law to show the unfitness on the part of the parent, whenever the child is committed to a state selected 'authorized' agency, where the parent did not consent to the permanent committal of the child."

Aside from the fact that neither plaintiff claims to have requested a hearing to determine plaintiff's fitness plaintiffs fail to present a due process question for the reason that they erroneously assume that the children are permanently committed to defendants' custody and that they are bound by defendants' interim refusal to turn over custody immediately. Defendants' decision not to turn over custody immediately to the mothers of the infants, although apparently based upon investigations revealing facts demonstrating that the mothers are unable to care for the children at this time, is not binding upon the plaintiffs and it is by no means final. Section 383 permits a parent to obtain custody upon order of the court. The New York Supreme Court, as successor to the prerogative of the Chancellor, acting on behalf of the State as *parens patriae*, is vested with the sole jurisdiction to determine the custody of minor children in the State of New York. Bachman v. Mejias, 1 N.Y.2d 575, 581, 154 N.Y.S.2d 903, 907, 136 N. E.2d 866, 869 (1956); People ex rel. Riesner v. New York Nursery and Child's Hospital, 230 N.Y. 119, 129 N.E. 341 (1920). The court acts solely in the interests of the infants and is not bound by the administrative determination of any agency. Finlay v. Finlay, 240 N.Y. 429, 148 N.E. 624, 40 A.L.R. 937 (1925). In such a habeas corpus proceeding, although the court would be entitled to consider the facts uncovered by the authorized agency and its recommendations, the court must make its own independent decision and the burden would be upon the defendants to establish that the parent seeking custody is unfit and that the child's welfare requires that custody be retained by the authorized agency. People ex rel. Anonymous v. New York Foundling Hospital, 17 A.D. 2d 122, 123, 232 N.Y.S.2d 479, 481 (1962), affd., 12 N.Y.2d 863, 237 N.Y.S. 2d 339, 187 N.E.2d 791 (1962); People ex rel. Kropp v. Shepsky, 305 N.Y. 465, 469, 113 N.E.2d 801 (1953).

"Except where a nonparent has obtained legal and permanent custody of a child by adoption, guardianship, or otherwise, he who would take or withhold a child from mother or father must sustain the burden of establishing that the parent is unfit and that the child's welfare compels awarding its custody to the nonparent." (People ex rel. Kropp v. Shepsky, 305 N.Y. at 469, 113 N.E.2d at 804)

Such a hearing before the New York Supreme Court must be distinguished from judicial review of administrative agency action where the court is limited to the record before the agency, may act only if the agency action is final, and may reverse only upon a determination

that the action was arbitrary, capricious or unsupported by substantial evidence. Title 5 U.S.C. § 706. Under § 383 of the Social Services Law the New York Supreme Court proceeds *de novo*, unlimited by the record, if such exists, made before the defendants. It may receive additional evidence and it is not restricted to a determination of whether defendants acted in error. As the successor to the Chancellor it possesses the ultimate equity power, subject in turn to review by New York's appellate courts for abuse of discretion or error of law. Matter of Jewish Child Care Association of New York, 5 N.Y.2d 222, 183 N.Y.S. 2d 65, 156 N.E.2d 700 (1959).

■ We recognize that in the absence of circumstances showing that a parent is unfit to care for or support his or her child, the parent cannot be deprived of custody of the child without due process of law. Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed. 2d 62 (1965); May v. Anderson, 345 U. S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953). Where the parents are unmarried, separated or divorced, however, the courts of the state where the child is located have jurisdiction to determine the matter of custody as between the parents. Ex parte Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 500 (1890). And where the parents are unable to care for and support their child, the state in the exercise of its police powers and for the protection of the health, safety and best interests of the children in its jurisdiction, has broad authority to regulate the custody and care of such children. Cf. Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1943). The effect of granting the relief requested in the present case would be to embroil this Court in a domestic tug of war between Boone and the mother as to whom should have custody of the child. Traditionally such disputes have been treated as falling within the exclusive jurisdiction of the state courts, exercising their functions as parens patriae in the best interests of the infant. Ex parte Burrus, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed.

500 (1890); Bercovitch v. Tanburn, 103 F.Supp. 62 (S.D.N.Y.1952); Wright, Federal Courts 73 (1963 ed.).

■ The lack of finality in the authorized agency's action, coupled with the existence of a prompt state judicial remedy in a *de novo* proceeding wherein the burden would be on the defendants, assures the plaintiffs of procedural due process. It has long been recognized that in such a context the right to a full judicial hearing, in which the court makes its own determination on the basis of evidence independently received by it, assures due process under the Fourteenth Amendment and that constitutional rights are not denied by the interim non-final decision of a state agency. Bourjois, Inc. v. Chapman, 301 U.S. 183, 189, 57 S.Ct. 691, 81 L.Ed. 1027 (1937); Columbia Auto Loan, Inc. v. Jordan, 90 U.S.App.D.C. 222, 196 F.2d 568 (1952); Randell v. Newark Housing Authority, 384 F.2d 151, 156 (3rd Cir. 1967); see Thorpe v. Housing Authority of the City of Durham, 386 U.S. 670, 678, 87 S.Ct. 1244, 18 L.Ed.2d 394 (1966).

"In the case last cited, a Maine statute required the registration of cosmetic preparations by the manufacturers or proprietors, and empowered a state agency to issue or deny, under described standards, certificates of registration of such preparations. The Supreme Court, by Mr. Justice Brandeis, concluded that the Federal Constitution did not require that 'there must be a hearing of the applicant before the board may exercise a judgment under the circumstances and of the character here involved', and that 'the requirement of due process of law is amply safeguarded by Section 2 of the statute,' providing for judicial review. 301 U.S. at page 189, 57 S.Ct. at page 695. See also Phillips v. Commissioner of Internal Revenue, 1931, 283 U.S. 589, 597, 51 S.Ct. 608, 75 L.Ed. 1289; Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892." (Columbia Auto Loan, Inc. v. Jordan, 196 F.2d at 570)

The foregoing analysis is not based upon the proposition that plaintiffs are not entitled to relief here because of a failure to exhaust state administrative remedies. Exhaustion of remedies is not a prerequisite to the maintenance of an action where substantial constitutional rights are in issue. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The Court's conclusion that plaintiffs' action is devoid of merit is rather based upon the existence of a judicial remedy in the New York state courts which provides due process of law. For the reasons stated herein plaintiffs' motions for a preliminary injunction and the convening of a three-judge court are denied. Defendants' motion to dismiss the complaint is granted.

The foregoing constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a), F.R.C.P.

It is so ordered.