**Talley R. HOLMES, Jr., Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW,**
Respondent.

**No. 8800.**

District of Columbia Court of Appeals.

Argued May 13, 1975.

Decided Feb. 3, 1976.

William C. Gardner, Washington, D. C., with whom William L. Murphy, Washington, D. C., was on the brief, for petitioner.

E. Calvin Golumbic, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Acting Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before GALLAGHER and YEAGLEY, Associate Judges, and HANNON, Associate Judge, Superior Court of the District of Columbia.*

YEAGLEY, Associate Judge:

Petitioner's application for renewal of his license[1] to operate an apartment house was denied by the Business Licenses and Permits Division of the District of Columbia Department of Economic Development on January 18, 1974[2] on the ground that 135 Housing Code violations existed on the subject premises, as found by the building inspector on July 23, 1973, after he had made at least three inspections. The petitioner appealed this denial to the District of Columbia Board of Appeals and Review which, after an evidentiary hearing, unanimously sustained the action of the Department of Economic Development. At each stage of this proceeding petitioner has conceded the existence of Housing Code violations and has stipulated that practically all of them remain unabated. Petitioner's primary arguments are that some of the Housing Code violations are de minimis and that many are unrelated to the health, safety, morals or general welfare of the tenants; that the Housing Regulations deny equal protection of law in that the Licensing Regulations are not applicable to structures containing two or less family units; and that the Housing Code should not be read into and enforced under the licensing provisions of the Housing Regulations. Finding no merit in any of petitioner's contentions, we sustain the denial of petitioner's license.

At oral argument newly retained counsel for petitioner conceded that some of the contentions argued below, in behalf of petitioner and in the petitioner's brief on appeal, which had been drafted by previous counsel, were in error. For example, it was conceded, and we agree, that the Housing Code does not, on its face, constitute an unconstitutional exercise of police power[3] and that as applied here is not void for vagueness.[4] See, e. g., State v. Schaffel, 4 Conn.Cir. 234, 229 A.2d 552 (1966). Similarly, petitioner's counsel at argument conceded and we agree that the limiting of the Licensing Regulations to buildings containing more than two units is not an unconstitutional deprivation of any right petitioner may have to equal protection under the due process clause of the Fifth Amendment. Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Neither can it be said that such a limitation is arbitrary or unreasonable. See Courembis v. District of Columbia, 89 U. S.App.D.C. 372, 193 F.2d 18 (1951); Givner v. Commissioner of Health, 207 Md. 184, 113 A.2d 899 (1955).

We further conclude that quite a number of the Housing Code violations involved in this case could be found to have a substantially detrimental effect on the health and safety of the tenants involved,

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. D.C.Code 1973, § 47–2328, D.C.Housing Regs. § 3102.1.

2. D.C.Housing Regs. § 3102.3 and § 3302. D.C.Code 1973, § 47–2345.

3. The City Council is authorized by statute to adopt and enforce "all such reasonable and usual police regulations . . . as the Council may deem necessary for the protection of lives, limbs, health, comfort and quiet of all persons and the protection of all property within the District of Columbia." D.C. Code 1973, § 1–226. See also D.C.Code 1973, § 1–228.

4. Petitioner did not dispute the building inspector's findings as to the existence of violations or contend that they were the result of his failure to understand the regulations.

particularly in light of the cumulative effect of the numerous violations, and consequently the denial of appellant's license renewal application was justified. The 135 Housing Code violations included: broken guard rails with missing and splintered parts; floors which contained cracks, holes and loose boards so that they were structurally unsound; missing window screens; defective light fixtures; and wall cracks of substantial dimensions. It is well within the constitutional limits of the police power for the government to take remedial action in the face of Housing Code violations of such magnitude. *State v. Schaffel, supra. See also Moton v. City of Phoenix*, 100 Ariz. 23, 410 P.2d 93 (1966); *Apple v. City and County of Denver*, 154 Col. 166, 390 P.2d 91 (1964) (en banc).

In so concluding, we add the caveat that should an apartment house operator's license be denied because of the existence of merely technical or cosmetic violations of the Housing Code, which would not pose a substantial threat to the health or safety of the tenants, the spectre of an unconstitutional taking of property may well be raised. The testimony taken by the Board of Appeals and Review, however, indicates that the inspector in this case conscientiously and reasonably applied the provisions of the Housing Code and it is apparent that several of the Housing Code violations related to the health and safety of the occupants. Consequently, we need not weigh the significance of each asserted violation.

■■ Section 3102.2 of the D.C.Housing Regulations provides that: "No license to operate or conduct a housing business

. . . shall be issued until the Director of the Department of Licenses and Inspection has determined that the applicable provisions of these regulations have been observed." The Housing Code, while found in a separate chapter of the Housing Regulations, is clearly "applicable" since the Housing Code applies expressly to ". . . every premises . . . used . . . as a place of abode for human beings", D.C.Housing Regs., § 2102, and has been incorporated into the licensing provisions chapter. *Whetzel v. Jess Fisher Management Co.,* 108 U.S.App.D.C. 385, 390, 282 F.2d 943, 948 (1960). *See also* D.C.Housing Regs. § 2304. We conclude that the Department of Economic Development may, following appropriate procedures, withhold a license to operate an apartment house on the basis of the existence of substantial Housing Code violations affecting the public health and safety.

■■ Raised for the first time by petitioner at oral argument on appeal is the contention that the denial of his application for a renewal of his apartment house license by the Business Licenses and Permits Division of the Department of Economic Development on the basis of the housing inspector's report without providing a hearing in advance constitutes an unconstitutional denial of property without due process of law.[5] We are mindful that the Department of Economic Development letter which notified petitioner that his application had been denied stated that the filing of an appeal before the Board of Appeals and Review would not stay the effect of its denial of petitioner's renewal application.[6]

---

5. There is no indication that petitioner sought an appeal from the notice of Housing Code violations pursuant to D.C.Housing Regs. § 1302.1. His appeal is from the denial of a license.

6. We note that the Department was correct in saying that the mere *filing* of an appeal before the Board does not stay the effect of the denial of petitioner's renewal application. However, since the Board has the power un-

der Organization Order Number 112, Part I C 2 d (iii) (see D.C.Code 1973, § 1 App.) and 4 D.C.R.R. § 1.6 to make "a decision sustaining, reversing, or modifying the action from which the appeal is taken", it would necessarily follow that it also has the power to order a stay pending final judgment. In fact, the Board should stay the order if requested to do so by a petitioner so that a due process hearing may take place.

The licensing regulation itself does not make a hearing by the Director of the Department of Economic Development a prerequisite to non-renewal. *See* D.C. Housing Regs. § 3102. However, since petitioner was conducting a going business under license, property rights had attached and the Fifth Amendment to the Constitution entitled him to a due process hearing in regard to non-renewal. *Jordan v. United Insurance Co.,* 110 U.S.App.D.C. 112, 115, 289 F.2d 778, 781 (1961); *Columbia Auto Loan v. Jordan,* 90 U.S.App.D.C. 222, 223, 196 F.2d 568, 570 (1952); *In re Carter,* 89 U.S.App.D.C. 310, 192 F.2d 15, *cert. denied,* 342 U.S. 862, 72 S.Ct. 89, 96 L.Ed. 648 (1951) and cases cited in J. Miller's concurring opinion, 89 U.S.App.D.C. at 320–24, 192 F.2d at 25–29. *See also Jordan v. American Eagle Fire Ins. Co.,* 83 U.S. App.D.C. 192, 169 F.2d 281 (1948). This, however, is not to say that the requisite hearing must always precede the taking of administrative action. It is sufficient if somewhere in the administrative-judicial process, due process was afforded petitioner. *Jordan v. United Insurance Co., supra,* 110 U.S.App.D.C. 112 at 117, 289 F.2d at 783; *Columbia Auto Loan v. Jordan, supra* 90 U.S.App.D.C. 222 at 223, 196 F.2d at 570.

Petitioner availed himself of the right to appeal a decision of the Director of the Department of Economic Development to the District of Columbia Board of Appeals and Review under Organization Order No. 112 (see D.C.Code 1973, § 1 App.) and Title 4 of the D.C.Rules and Regulations. At that time, he was given a full evidentiary hearing which accorded with the requirements of both procedural and substantive due process. He cannot now complain that the requirements of the Constitution have not been met. *See Jennings v. Mahoney,* 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971). Under the facts of this case, it is clear that petitioner did receive due process and thus he cannot assert here that he was entitled to such a hearing prior to revocation.

Courts have long held that a due process hearing need only be accorded once and that other hearings would merely be repetitive. For instance, in the case of *Columbia Auto Loan v. Jordan, supra,* the United States Court of Appeals for the District of Columbia Circuit ruled that the appellant could be refused a renewal of its insurance policy-writing license without an immediate hearing as long as a due process hearing was accorded it somewhere along the line. There the court held that a trial *de novo* in the District Court satisfied this requirement. Likewise in *Jordan v. American Eagle Fire Ins. Co., supra,* the Circuit Court considered a similar challenge to a rate-making statute. The court held:

> [The insurance] statute did not require a quasi-judicial hearing by the Superintendent. It prescribed an investigative, or legislative, process only. . . . But we do not think that the [Superintendent's rate-making] order was invalid merely because it was not preceded by a quasi-judicial hearing. . . . [W]here the requisite due process hearing is not included in the legislative or administrative process, it may be adequately supplied by a judicial proceeding in which new evidence may be supplied and full opportunity afforded for exploration of the bases of the disputed order. [*Id.* 90 U.S.App.D.C. at 198, 200, 169 F. 2d at 287, 289.]

On the basis of these cases, we hold that petitioner was not denied his constitutional right to due process of law. At the full hearing before the Board of Appeals and Review, he stipulated to the existence of Housing Code violations and made his legal arguments. He was accorded a due process hearing which is what the Constitution guarantees to him even though it did not precede the original license denial.

We need not reach the question of whether the license denial should have been stayed *pendente lite* since petitioner

neither asked the Board for a stay, nor complained in this court of its failure to stay. *See Columbia Auto Loan v. Jordan, supra,* 90 U.S.App.D.C. at 195 n. 4, 196 F. 2d at 571 n. 4.

Accordingly, there being no reversible error in the proceedings below, the order of the Board of Appeals and Review is

*Affirmed.*