[Civil No. 3022.   Filed October 6, 1931.]

[3 Pac. (2d) 518.]

SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. THE CORPORATION COMMISSION OF THE STATE OF ARIZONA, LOREN VAUGHN, AMOS A. BETTS and W. D. CLAYPOOL, as Members of and Constituting Said Commission, Appellees.

Mr. Del W. Harrington and Messrs. Baker & Whitney, for Appellant.

Mr. K. Berry Peterson, Attorney General (Messrs. Sutter & Gentry, of Counsel), for Appellees.

ROSS, J.—This is an appeal by the Southern Pacific Company from a judgment and order of the superior court of Maricopa county affirming and approving an order and decision of the Corporation Commission directing said appellant to refund to the Shattuck-Denn Mining Corporation certain switching charges.

The action in the superior court and this appeal are provided for in section 720 of the Revised Code of 1928.

On December 23, 1924, an application of the Shattuck-Arizona Copper Company was filed with the Corporation Commission alleging that the switching charges of the El Paso & Southwestern Railroad Company and the Southern Pacific Company were unjust, unreasonable, and excessive. Thereafter a hearing was had upon such application, at which time the Shattuck-Denn Mining Corporation had succeeded to the rights of the Shattuck-Arizona Copper Company and the Denn-Arizona Copper Company, also a shipper; and the Southern Pacific Company had acquired the control of the El Paso & Southwestern Railroad Company.

Herein we shall refer to the Southern Pacific Company as the carrier and the Shattuck-Denn Mining Corporation as the complainant.

The commission found it unnecessary to determine whether the charges were unjust, unreasonable or excessive, but held the question was one of tariff interpretation.

On July 1, 1922, the El Paso & Southwestern Railroad Company (predecessor of appellant) filed with the Corporation Commission a tariff schedule in which the various switching services the carrier performed were classified and defined as follows:

"Intra-plant switching: A switching movement from one track to another within the same plant or industry.

"Intra-terminal switching: A switching movement (other than intra-plant switching) from one track to another of the same road within the switching limits of one station or industrial switching district.

"Inter-terminal switching: A switching movement from a track of one road to a track of another road when both tracks are within the switching limits of the same station or industrial switching district."

The rate for intra-plant switching was fixed at $3.60 per car movement and for intra-terminal and inter-terminal at $7.20 per car movement.

The carrier had charged the complainant and its predecessors for intra-terminal movements. The commission held the movements were intra-plant, and ordered the carrier to refund to the complainant $3.60 on each car movement.

This suit was brought by the Southern Pacific Company to test the correctness of the commission's order, and resulted in its approval by the trial court. The same question is presented on this appeal. It was stipulated in the trial that the question involved is, "Was the service or movement involved an intra-plant or an intra-terminal movement?" Thus the question of the reasonableness or unreasonableness of the charges is eliminated. Appellant, Southern Pacific Company, contends the movements were intra-

terminal, and that the commission and the trial court, in holding that they were intra-plant, erred.

The pertinent facts are, and we take them largely from appellant's brief, the appellee not disputing them: That the tracks and spurs over which the movements were made, as also the right of way, belong to the carrier, and are all within the Bisbee switching district, which includes the yard limits at Bisbee Junction on the main track of the carrier and all intermediate trackage between that point and the end of the branch line, extending from Bisbee Junction into Bisbee; that the distance from the ore bins, where the ore is loaded on the cars, to Bisbee is 2,235 feet, and that the distance from the end of the main line at Bisbee to the switch of what is known as the Denn main spur, just below Lowell, is 10,822.3 feet, and that the distance from the Denn main spur to the switch of the mill spur is 3,704.5 feet; that the total distance of the movement from the Shattuck ore-bins, upon what is called the high line, to the unloading bins at the mill is 17,915 feet, approximately 3.4 miles; that there is located at the mine a hoist, buildings and all equipment and facilities for bringing ore out of the ground to the surface of the earth and loading it into the cars, and that the mill consisted of mill bins, dryatory crusher, Simms Ball Mills, flotation machines, filter and storage for ore concentrates, and all facilities necessary for the concentration of ores; that there were produced at the mine two classes of ores, a high grade and a low grade; that the high grade could be shipped directly to the customs mill at Douglas, Arizona, or to El Paso, Texas, without being concentrated at Bisbee; but that it was necessary to concentrate the low grade before it could be shipped with profit.

The commission, in arriving at the conclusion that the movements were intra-plant, reasoned this way.

They said the business of complainant consisted of two units: One the production of ore at the mine, and one the reduction of that ore at the mill; that it was necessary that the ore be reduced because its quality and value would not permit a substantial transportation charge; that the industry could not function without both units, and that one would be of no value without the other, and therefore the two units constituted a plant or industry.

The appellant contends that, in determining whether the car movements were intra-plant or intra-terminal, the necessity of reducing the ore before it could be made profitable is aside from and foreign to the question, for two reasons:

(1) That it is the character of service rendered by the carrier, and not the business motives or commercial reasons of the shipper in causing his commodity to be shipped or the service to be rendered, that determines the rates and charges. The carriers do not fix their charges upon the ability of the commodity shipped to stand such charges. But for the same service the same rate must be charged, even though the result might be that one shipper's commodity could, and another's could not, stand that charge. This seems to be a cardinal rule in rate-fixing. For instance, the passenger is charged for the accommodations afforded and the length of his journey, but in no case is such charge predicated upon the reason or purpose of the passenger in making the journey. This rule has been many times announced and adhered to by the Inter-State Commerce Commission and also the courts. *Interstate Commerce Commission* v. *Baltimore & O. Ry. Co.*, 225 U. S. 326, Ann. Cas. 1914A 504, 56 L. Ed. 1107, 32 Sup. Ct. Rep. 742; *Pennsylvania R. Co.* v. *International Coal Min. Co.*, (C. C. A.) 173 Fed. 1 (reversed in 230 U. S. 184, 57 L. Ed. 1446, 33 Sup. Ct. Rep. 893, on another

point); *Brainerd Fruit Co.* v. *Chicago G. W. R. Co.*, 163 I. C. C. 585; *Louisville Cement Co.* v. *Pennsylvania R. Co.*, 163 I. C. C. 199; *In re Rules Governing Ratings of Coal Mines*, 95 I. C. C. 309; *Potomac Electric Power Co.* v. *Chesapeake & O. Ry. Co.*, 152 I. C. C. 641.

(2) For a stronger reason it is said the use or purpose or reason influencing the shipper to ship his commodity cannot vary the rates or classifications as filed with and approved by the Corporation Commission; that such schedules have the force of statutes. To this point citation is made of section 12 of article 15 of the Constitution, as follows:

"All charges made for service rendered, or to be rendered, by public service corporations within this State shall be just and reasonable, and no discrimination in charges, service, or facilities shall be made between persons or places for rendering a like and contemporaneous service. . . . "

Attention is also directed to sections 675 and 676, Revised Code of 1928, which provide that every common carrier shall file with the Corporation Commission a schedule of rates, classifications, etc., and prohibit any departure therefrom except upon the consent of the commission after notice and a hearing.

It would seem, therefore, that in determining whether the movements were intra-plant no consideration should be given to the suggestion that the commodity as extracted from the mine could not stand a transportation charge, or the necessity for the reduction of the ore.

Appellees admit, or at least do not controvert, the above propositions. They say the necessity of reducing the ore was not considered by the commission in the interpretation of the schedule, and was put in only for the purpose of showing the necessity of operating the mill in conjunction with the operation

of the mine. This, of course, makes the question as to whether the mine and mill are units of one plant or industry turn upon the character of the ore. If it needs to be reduced and concentrated before it will bear the transportation, they are together one plant or industry, according to the appellees' reasoning, and this regardless of the distance they may be apart.

It is obvious the movements in question must be determined by their nature and character and not by the necessities of the shipper. The rates for switching cars, as set forth in the tariff, show clearly they are based upon the character and amount of services rendered. The principle of graduating the rate according to the service rendered is manifest, in that the shorter the haul, the lower the rate. For instance, the charge for a movement confined to the plant or industry is only 50 per cent. of the charge for a movement both inside and outside of the plant or industry and within the switching limits. The former is "a switching movement from one track to another within the same plant or industry," and the latter is "a switching movement (other than intra-plant switching) from one track to another of the same road within the switching limits of one station or industrial switching district."

Appellees state that the decision of the case rests solely upon the construction of the phrase "within the same plant or industry," and that in construing the phrase great weight should be given the word "industry." In this connection appellees say the word "plant" imports a much narrower meaning than the word "industry," for industry may consist of several different plants; for instance, the industry of mining may consist of a power plant, a precipitating or leaching plant, a concentrator or milling plant, etc. It is true the word "industry," disassociated from any other word or words, comprehends all the

things mentioned and more. Webster defines industry as:

"Any department or branch of art, occupation, or business; esp., one which employs much labor and capital and is a distinct branch of trade; as, the sugar industry; the iron industry; the cotton industry; agricultural industries."

The same lexicographer defines plant as:

"The machinery, apparatus, fixtures, etc., employed in carrying on a trade or a mechanical or other industrial business; as, an electric-light plant, a fishing plant, etc. In the commercial sense, a plant may include real estate and all else that represents capital invested in the means of carrying on a business, exclusive of the raw material or the manufactured product. A workshop or other apparatus complete; as, a bicycle plant. By extension, the equipment of any institution; as, the plant of a college."

Some court definitions of the word "plant" are as follows:

"A 'plant' has been defined as 'the fixtures, machinery, tools, apparatus, appliances, etc., necessary to carry on any trade or mechanical business, or any mechanical operation or process.' 7 Century Dict. and Cyc. 4531; *Southern Bell Telephone Co.* v. *D'Alemberte,* 39 Fla. 25, 21 So. 570." *State Public Utilities Com.* v. *Noble,* 275 Ill. 121, 113 N. E. 910, 913.

"The word 'plant' in its ordinary acceptation, when used in connection with and relating to a business, includes everything other than supplies and stock in trade necessary and requisite to the carrying on of the business." *Martin* v. *Matson Navigating Co.,* (D. C.) 244 Fed. 976.

"A 'plant' consists only of fixtures, machinery, tools, and apparatus necessary to carry on business." (Syl.) *State* v. *Moss,* 160 La. 724, 107 So. 505.

"A 'plant' is the 'machinery, tools, apparatus, appliances, etc., necessary to carry on any trade or mechanical business, or any mechanical operation or process.' *Southern Bell Tel. & Telegraph Co.* v.

*D'Alemberte,* 39 Fla. 25, 37, 21 So. 570, 572; *Rooney*
v. *Thomson,* (Sup.) 84 N. Y. Supp. 263; *Maxwell* v.
*Wilmington Dental Mfg. Co.,* (C. C.) 77 Fed. 938,
941.'' *Nelson* v. *Downtain,* (Tex. Com. App.) 265
S. W. 135.

However, we think the context in which the words
"plant" and "industry" appear in the tariff indicates
clearly that the word "industry" was not intended
to have the broad dictionary meaning. We say so for
the following reasons: In the first place, in the defini-
tion of intra-plant movements, such definition is in-
dexed as intra-plant and not intra-industry. In the
definition of intra-terminal, movements of the first kind
are excepted therefrom and referred to as intra-plant
and not intra-industry. In other words, the emphasis
is on the word "plant." The tariff doubtless, in so
far as human foresight could determine, was intended
to cover every kind and character of switching move-
ments. These movements were divided into three
classes, and each one was intended to cover a differ-
ent situation, and therefore a different movement.
An intra-plant movement is more circumscribed than
the other two movements. Although the definition
of the former in the tariff does not limit the move-
ment to the switching district, it is implicit that it
must be within such limit and cover only the space
or territory ordinarily and commonly owned, used
and occupied in operating the plant or industry.
Intra-terminal movements must be on the same road,
but different tracks, and may extend to the switching
limits of the district. Inter-terminal movements must
be on not less than two roads and within the switch-
ing limits of the station or industrial district.

If the broad meaning of *industry* contended for by
appellees be correct, then intra-plant movements would
not be intra-plant but intra-industry; and, if the ship-
per had, in connection with his mining operations, a

mine from which the ore was extracted, a power plant, a leaching plant, a concentrating plant, a milling plant, and a smelting plant, all located in the same switching limits, although widely separated, he could demand and receive car-movement service at the price fixed by the tariff for intra-plant movements. The word "plant" under such a construction might just as well have been omitted.

We think it quite clear that the phrase "within the plant or industry," as used in the tariff, has no reference to the mining industry as a whole, but relates to a particular operation within such industry, so located as to be connected with some other unit of the same industry by a switch or spur track, so that a car can be moved from one point to another within such plant or industry without having to be moved over the main line of the carrier.

In this country plants used in carrying on business usually are located on or near the tracks of common carriers, and are reached from the main line over spurs. The courts have upon occasion referred to such plants as "industries or plants," *Los Angeles Switching Case,* 234 U. S. 294, 58 L. Ed. 1319, 34 Sup. Ct. Rep. 814; as "industrial plants," *Sherman* v. *United States,* 282 U. S. 25, 75 L. Ed. 143, 51 Sup. Ct. Rep. 41; as "manufactories and industries," *Pennsylvania Co.* v. *United States,* 236 U. S. 351, 59 L. Ed. 616, 35 Sup. Ct. Rep. 370; and the spur leading to the plant as an "industrial track," *Gulf, C. & S. F. Ry. Co.* v. *Texas & P. Ry. Co.,* (C. C. A.) 4 Fed. (2d) 904. While these courts were not passing upon the question we have here, their statements do show that in common parlance *a plant* and *an industry* connote the same thing.

The applicable rule of interpretation will not permit the construction of the phrase in question contended for by appellees. It is said: "Associated

words explain and limit each other. When a word used in a statute is ambiguous or vague, its meaning may be made clear and specific by considering the company in which it is found and the meaning of the terms which are associated with it." Black on Interpretation of Laws, 2d ed., § 67, p. 194.

It is not necessary under this rule to reject either the word "plant" or the word "industry." Whichever it is, it is a single establishment. It may consist of one unit or plant, or it may consist of many units or plants. In the latter case, the associated units or plants could properly be designated an industry, although not covering the whole subject. The essential thing is that it be a single establishment reached by railroad spurs and having located therein switching tracks upon which cars are moved from one track to another within the boundaries of such plant or industry, delimited by its use and occupancy or by inclosures.

Here the movement was for a distance of 3.4 miles over a spur from the mine to the main line; thence over 10,000 feet over the main line; thence over spur to mill. The movement was not within the plant or industry, as above defined; it was within the switching district or station, and over three tracks of the same road, one being the main line. Such a movement falls within the classification designated in the tariff as intra-terminal. It was not an intra-plant or intra-industry movement.

Appellees state that the facts of the Sunnyside case, reported as the *Utah Fuel Co.* v. *Director General, as Agent,* in 80 I. C. C. 229, and on rehearing in 102 I. C. C. 493, are similar to the facts here, and that the decision therein is authority for their contention. If it be granted that the facts are similar, the decision therein upon rehearing is clearly against the appellees' contention. We quote:

"The present contention of defendant that the switching at Sunnyside was an intraterminal rather than an intraplant movement and accordingly subject to a higher basis of charges can not be sustained. The movement was between two parts of the same plant and constituted an integral part of the single operation of coke manufacture. As the movement, however, was for a considerable portion of the distance over the tracks of the carrier, it does not fall within the category of a plant operation. . . . "

The facts in the two cases are not the same. A careful reading of the opinions in the Sunnyside case will disclose that the movement was entirely upon the grounds of the Utah Fuel Company, from the coal-mine tipple to its slack-coal storage bins, and was made with the help of the employees of the fuel company. For that reason, the commission said: "The movement was between two parts of the same plant and constituted an integral part of the single operation of coke manufacture." And it was a movement from one point to another within the area wherein different parts of the same plant were situated—quite a different situation from this one.

In the Sunnyside case it was held that the tariff schedule for intra-plant and intra-terminal movements did not apply, and the case was decided solely upon the reasonableness of the charges made.

We are satisfied that the Corporation Commission committed error in holding that the movement was an intra-plant movement, and that the trial court likewise erred in approving and affirming such holding.

The judgment is reversed and the cause remanded, with directions that judgment be entered in favor of the appellant, Southern Pacific Company.

McALISTER, C. J., and LOCKWOOD, J., concur.