449 P.2d 957

Ascencion CAMERENA, Appellant,

v.

DEPARTMENT OF PUBLIC WELFARE
and Maricopa County Department of Pub-
lic Welfare of the State of Arizona, Appel-
lees.

No. I CA–CIV 719.

Court of Appeals of Arizona.

Jan. 28, 1969.

Rehearing Denied March 6, 1969.

Review Granted April 15, 1969.

Gorey & Ely and Oscar C. Rauch, by Herbert L. Ely and Oscar C. Rauch, Phoenix, for appellant.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, former Atty. Gen., by Peter Sownie, Asst. Atty. Gen., for appellee.

STEVENS, Judge.

This is an appeal from a judgment of the Superior Court for Maricopa County, denying appellant's petition for writ of certiorari or, in the alternative, a writ of mandamus, wherein she sought to have certain laws and regulations relating to "Aid to Dependent Children" declared void.

The stipulated facts indicate that Ascencion Camerena and her 11 minor children were receiving Welfare Benefits entitled "Aid to Dependent Children", commonly known as A.D.C., from appellees.

Prior to being placed on the program the children were investigated, pursuant to applicable law, and found to be eligible for A.D.C. on the basis of the knowledge appellees then had.

Thereafter, by letter dated 21 January, 1966, appellant was advised as follows:

"This is to inform you that your Aid to Dependent Children grant of $220 is being suspended, effective February, 1966. This action is being taken due to the fact that Mr. Antonio Valenzuela was found to be living in your home.

"If you have any questions regarding this decision, please get in touch with me.

"If you are not in agreement with this decision, you have the right to a hearing. Forms for filing an appeal are furnished by this office.

"We will assist you in completing these forms if you desire such help."

Valenzuela was the father of the two youngest children. Aside from this purported violation the minor children were qualified for and entitled to payments pursuant to A.D.C.

On 19 April, 1966, after the suspension went into effect, the appellant requested a hearing. A hearing was set for 2 May, 1966, and was continued until 9 May, 1966, at the request of her counsel. On 8 June, 1966, a decision was reached upholding the suspension from the welfare rolls.

From February 1966, until the date of the decision of the Welfare Department on 8 June, 1966, no A.D.C. payments were made to the petitioner for the minor children. The decision of 8 June, 1966, was final under A.R.S. § 46–205, subsec. C.

On 16 August, 1966, the appellant filed a petition for a writ of certiorari, or in the alternative for a writ of mandamus, with the Superior Court. Issues were joined, a stipulation of facts was entered into, and the case was argued before the trial court on 15 December, 1966. The hearing involved no testimony, but the questions of law revolved around the stipulated facts

and the exhibits attached thereto were argued. The court entered its judgment denying the petition for extraordinary relief. The appellant appealed to the Arizona Supreme Court. The Supreme Court did not undertake jurisdiction and appeal was transferred to the Court of Appeals. In the Court of Appeals, the appellees argued several facts which go beyond the matters contained in the Stipulation of Facts. Although we find these additional facts colorful, we are unable to consider any matters outside the stipulated facts. Rule 52(c), Arizona Rules of Civil Procedure, 16 A.R.S.

The issues which we must determine are as follows:

(1) Whether termination of A.D.C. benefits without a prior hearing constituted a violation of procedural due process under Article 2, Section 4, of the Arizona Constitution, A.R.S., or the Fourteenth Amendment to the United States Constitution.

(2) Whether subsection 3 of A.R.S. § 46–292 relating to the requirements for eligibility for assistance is an unconstitutional delegation of legislative power.

(3) Whether the A.D.C. Act is unconstitutional for failing to provide for judicial review of decisions of the State Department of Welfare.

## PROCEDURAL DUE PROCESS

Appellant first contends that the suspension of A.D.C. benefits without affording appellant a prior hearing constituted a violation of due process. She urges, alternatively, that either A.R.S. § 46–204, subsec. B, which relates to the opportunity for a hearing when A.D.C. benefits are modified or suspended, is unconstitutional because it does not require a prior hearing, or, if the statute can be interpreted as requiring a prior hearing, the application of the statute in this instance was an unconstitutional deprivation of due process because appellant was not afforded an opportunity for a prior hearing.

■ It is firmly established that when a person has been aggrieved by the action taken by a governmental agency, such person has the constitutional right to a hearing on issues of adjudicative facts. McGee v. Arizona State Board of Pardons and Paroles, 92 Ariz. 317, 376 P.2d 779 (1962); Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963); Bennett v. Arizona State Board of Welfare, 95 Ariz. 170, 388 P.2d 166 (1963); Londoner v. City and County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908).

It is clear in this instance that the suspension of welfare benefits involved adjudicative facts, as distinguished from legislative facts. It is also clear that appellant was afforded a hearing subsequent to the time the appellees suspended the welfare benefits. The narrow question which we are called upon to determine is whether the appellant was deprived of due process by reason of the suspension of benefits without affording her an opportunity to be heard prior to the suspension becoming final.

Our research discloses numerous federal decisions which hold that a governmental agency must afford a person an opportunity for a hearing before the action taken by the agency becomes final. Cases enunciating this doctrine include Londoner v. City and County of Denver; Dixon v. Alabama State Board of Education, 294 F.2d 150 (5 Cir., 1961).

The Arizona case which seems most pertinent to the issue at hand is Schecter. That case involved that portion of Arizona's Financial Responsibility Act which provides for the suspension of a driver's license unless financial responsibility is shown. The statute contains two provisions for a hearing:

(1) upon request by a person aggrieved by action of the superintendent; and

(2) persons aggrieved by the superintendent's action could within 10 days bring an action for a trial de novo in the Superior Court to determine the lawfulness of the action taken. Schecter challenged the constitutionality of the act on the grounds, in part, that it violated due process inas-

much as it failed to require the opportunity for a hearing prior to the action taken, that is, prior to the suspension of a driver's license. The Arizona Supreme Court upheld the constitutionality of the Act as against the due process argument. The Court first noted that several states had upheld the validity of the similar statutes on grounds of a "compelling public interest" requiring immediate action. The Arizona Supreme Court rejected this ground after finding no compelling public interest present. The Court upheld the constitutionality of the statute by interpreting the statute to require a prior hearing. After rejecting the "compelling public interest" exception the Court stated at page 282 of 93 Ariz., at page 142 of 380 P.2d:

"While there is some ambiguity in the wording of the subject legislation, this Court believes that it is implied in this statute that, when requested, an aggrieved person shall have an administrative hearing before the suspension order becomes effective."

The Court further stated:

"Accordingly, giving these various provisions the only meaning that would, in our view, render the statute constitutional, we hold that the administrative hearing provided by A.R.S. Section 28–1122, subd. A must, if requested, be conducted prior to the effective date of an order of suspension under the act."

■ There are numerous decisions wherein the courts have departed from the due process requirement of a prior hearing. This exception has been recognized where the circumstances disclose a compelling public interest necessitating immediate action. A review of the decisions wherein the "compelling public interest" doctrine was invoked reveals that the exception is sparingly applied, and only in those cases where the interest of the aggrieved individual is clearly subordinate to the interests of the public. For example, see North American Cold Storage Company v. City of Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) involving summary sei-zure and destruction of contaminated foods; and Standard Airlines v. C.A.B., 85 U.S.App.D.C. 29, 177 F.2d 18 (1949), involving summary suspension of a pilot's license for safety reasons.

■ There is no compelling interest in the instant case which necessitates summary action by the State. One of the interests which the State has in terminating benefits is financial. A.R.S. § 46–294, 46–295 provides that the State may recover payments made to a person who is not eligible. In 76 Yale Law Journal 1234, (May 1967) there is a lengthy discussion, entitled Withdrawal of Public Welfare: Right to a Prior Hearing. At pages 1236 through 1243 there is a discussion of the "compelling interest" doctrine and its application to welfare hearings. The author analyzes the interest of the government in relation to the interests of the welfare recipient. We paraphrase his conclusions as follows:

(1) The needy child has a great interest in a prior hearing because a subsequent hearing cannot undo the wrong resulting from a prior mistake. If the State was wrong in terminating benefits the child will have been denied the relief necessary for his basic subsistence.

(2) Once benefits are suspended the recipient will be all the less able to seek a subsequent hearing because once he is faced with need to live he can scarcely devote the time and energy necessary to show that he is still eligible.

■ The due process right to a prior hearing has traditionally been subjected to a second qualification, namely, that the individual claiming the right to a prior hearing must show that he has a sufficient right or interest at stake. This involves the distinction between right and privilege.

In this connection, the State urges that the appellant was not entitled to a prior hearing because the payment of welfare benefits is a mere gratuity and not a right protected by the Constitution.

■ We agree that the right to receive benefits is not a constitutional right. We cannot agree that these payments are a

mere gratuity. Although courts have traditionally adhered to the strict application of the privilege-right distinction in relation to the due process requirements of a hearing, there is a growing number of cases which depart from this rigid doctrine and apply constitutional principles of procedural fairness even though only a privilege is involved. The rationale of the later decisions is that once the government has extended a privilege to some individual it must act fairly in relation to others in distributing privileges. For example, see Dixon v. Alabama State Board of Education, wherein the United States Court of Appeals rejected the privilege-right dichotomy as justifying the summary expulsion of students from a state college.

"It is not enough to say as did the district court in the present case, 'The right to attend a public college or university is not in and of itself a constitutional right.' [Dixon v. Alabama State Board of Education, D.C.] 186 F.Supp. [945] at page 950. That argument was emphatically answered by the Supreme Court in the Cafeteria and Restaurant Workers Union [v. McElroy] case, supra, ([367 U.S. 886] 81 S.Ct. [1743] 1748 [6 L.Ed. 2d 1230]) when it said that the question of whether ' * * * summarily denying Rachel Brawner access to the site of her former employment violated the requirement of the Due Process Clause of the Fifth Amendment * * * cannot be answered by easy assertion that, because she had no constitutional right to be there in the first place, she was not deprived of liberty or property by the superintendent's action. "One may not have a constitutional right to go to Bagdad, but the Government may not prohibit one from going there unless by means consonant with due process of law." ' "

Also see United States v. Chicago, M., St. P. & P. R. Co., 282 U.S. 311, 51 S.Ct. 159, 75 L.Ed. 359 (1931); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Thompson v. Shapiro, 270 F.Supp. 331 (D.C.Conn.1967); Green v. Department of Public Welfare of the State of Delaware, 270 F.Supp. 173 (D.C.Del., 1967); Smith v. Reynolds, 277 F.Supp. 65 (E.D.Pa., 1967). Probable jurisdiction noted 390 U.S. 940, 88 S.Ct. 1054, 19 L. Ed.2d 1129.

We approve of the principle quoted in Dixon, and followed in the cases cited. Moreover, we are of the opinion that when the Arizona Legislature provided for A.D. C., it did not intend that the payment of benefits to qualified recipients be a mere gratuity which could be withdrawn without regard to principles of fairness implicit in due process. Section 7 of Article 9 of the Arizona Constitution prohibits the making of "donations" of public funds.

A.R.S. § 46–204, subsec. B expressly provides that where an application for assistance is denied, or the payment of benefits is modified, the applicant shall be informed "of the right to a hearing on the rejection or modification". The reasonable inference to be drawn from this provision is that the Legislature intended to establish safeguards against arbitrary action on the part of the State in administering A.D.C. benefits.

It is our view that the due process clause of Article 2, Section 14, of the Arizona Constitution, and the Fourteenth Amendment of the U. S. Constitution require the State to afford appellants a hearing before the suspension of A.D.C. benefits becomes final. We wish to make it clear, however, that the matters determined in this case are limited to the Welfare Department and to the facts presented in this case.

We note that in support of its position that due process does not require a prior hearing, the State has cited the case of Wheeler v. Montgomery, decided on 19 April, 1968, by a three-judge court of the United States District Court for the Northern District of California, —— F. Supp. ——. We have been informed that this case is not reported. We, therefore, express no opinion with reference to that decision as it might relate to the issue in question.

We next turn to the question whether our statutes relating to the granting of A.D.C. benefits require a hearing consistent with the foregoing principles.

██ In resolving this question, we adhere to the rule that in determining whether a statute is unconstitutional, if different constructions are possible, it should be construed in such a manner that it will be held to be constitutional. *Schecter.* While there is some ambiguity in the language of A.R.S. § 46–201, as it relates to the time when a hearing is to be afforded, we are of the opinion that when the subject statute is read in conjunction with the other provisions relating to administration of welfare benefits, a prior hearing is required, hence the statute is constitutional.

A.R.S. § 46–291, subsec. A, is as follows:

"A. Dependent children assistance shall be administered by the state department of public welfare subject to the provisions of chapter 1 and article 1 of chapter 2 of this title."

A.R.S. § 46–204 relates to granting of assistance. Subsection A provides that upon completion of the investigation of an applicant for assistance the county shall decide according to the policies, rules, and regulations of the state welfare department whether the applicant is eligible for assistance. Subsection B is as follows:

"The applicant shall be notified of the decision in writing. The assistance shall be paid monthly to the applicant. When an application is rejected wholly or in part, or when modification of assistance is made, written notice shall be given to the applicant. Such notice shall inform the applicant or recipient of the right to a hearing on the rejection or modification."

A.R.S. § 46–211 is somewhat duplicative of A.R.S. § 46–204, and relates to periodic reconsideration and change of amount of assistance.

"A. All assistance or service grants made under this title shall be reconsidered by the state department as frequently as required by the rules of the department. After further investigation as the department deems necessary, the amount of assistance or service may be changed or assistance or service withdrawn if the department finds that recipient's circumstances have altered sufficiently to warrant such action. The department may at any time cancel and revoke assistance or service for cause, and it may for cause suspend assistance or service for such period as it deems proper.

"B. All decisions made under the provisions of this section shall be subject to review and the granting of an opportunity for a fair hearing by the state department as provided by law."

We believe the language, "all decisions * * * shall be subject to review and the granting of an opportunity for a fair hearing", when read in conjunction with A.R.S. § 46–204 implies that a hearing be afforded prior to the time the order of suspension becomes effective. We hold that A.R.S. § 46–204 does require a hearing prior to the time the order of suspension becomes effective. We further hold that since the appellant was not afforded the opportunity of a prior hearing, as required by A.R.S. § 46–204, the order of February 1966 suspending benefits was contrary to due process requirements.

Whether due process requirements would be satisfied by having a hearing before an individual with the right to a "review and * * * fair hearing by the state department" is a matter with reference to which we express no opinion.

Appellant next seeks to have this Court declare invalid two regulations promulgated by the State Welfare Department. The regulations under attack are Regulation 3–403(6) (d), and Regulation 3–407.4(a).

We have been informed that the regulations in question were repealed prior to the argument of this case before us. Since we have found an absence of due process we are not called upon to pass judgment as to these regulations. Of great interest in this

area of welfare law is the case of King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L. Ed.2d 1118 (1968).

## DELEGATION OF LEGISLATIVE POWER

Appellant also contends that A.R.S. § 46–292, subsection 3, which sets forth one of the eligibility requirements for A.D.C. benefits, is an unconstitutional delegation of legislative power contrary to Article 4, Part 1, Section 1, of the Arizona Constitution. This argument is based on the asserted lack of sufficient standards to guide the State Department in exercising the authority delegated to it. In this connection it is also argued that the statute is violative of due process because the language is so vague and uncertain that it fails to inform persons of common intelligence what is required by the statute.

■ ▉▉▉ We agree with appellant's contention that unless the delegation of legislative power is limited by adequate standards to guide the State Welfare Department in the exercise of the power granted, such delegation would be unconstitutional. See Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770 (1963); and State v. Marana Plantations, Inc., 75 Ariz. 111, 252 P.2d 87 (1953). We do not agree, however, that there is an improper delegation of legislative authority in A.R. S. § 46–292, subsection 3.

42 U.S.C. Section 602(a) (9) imposes a federal duty on all states participating in the Federal Government's Aid to Families Dependent Children Program, to furnish "aid to families with dependent children * * * with reasonable promptness to all eligible individuals * * *."

The authority for determining eligibility for an applicant for A.D.C. assistance is vested in the State Department of Welfare pursuant to A.R.S. § 46–204. In determining whether an applicant is eligible for assistance certain eligibility requirements are set forth in A.R.S. § 46–292. One of the requirements for eligibility, as set forth in

subsection 3 of A.R.S. § 46–292, is as follows:

"Assistance shall be given under this title to any dependent child;
\* \* \* \* \* \*
3. Whose parent or parents or person or persons acting in the parents' place, if employable, shall not refuse to accept available employment and if any employable child in the family does not refuse to accept available employment."

While this provision, by itself, is not clear with reference to what is contemplated by the phrase "persons acting in the parents' place", the language objected to by appellant as rendering this section vague and uncertain, we find the section sufficiently clear and certain when we apply the definition of "dependent child", as set forth in A.R.S. § 46–101, subsection 6, to the subject provision:

"6. 'Dependent child' means a needy child under the age of eighteen years who has been deprived of parental support or care by reason of the death, unemployment of the supporting parent as defined and prescribed by federal statutes relating to welfare, continued absence from the home, or physical or mental incapacity of a parent, and whose relatives who are responsible under the law for the child's support are not able to provide adequate care and support of the child without public assistance, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle or aunt, in a place of residence maintained by one or more of such relatives as his or their own home or who is placed in a foster home as a recipient of aid for dependent children. An educable child acceptable in the public school system must attend school to be eligible as a dependent child."

▉▉▉ Reading this definition into the provision in question, we interpret the language "persons acting in the parents' place," to refer to any one of several listed

relatives particularly described in the statutory definition of "dependent child". This holding does not preclude the possibility of valid regulations in this important area of the law, regulations adopted pursuant to the grant of authority as contained in A.R.S. § 46–134.

## JUDICIAL REVIEW

■ Appellant finally urges that the Arizona Act for Assistance to Dependent Children is unconstitutional because there can be no judicial review of the decision of the State Department of Public Welfare. She argues that since decisions of the State Department of Welfare are expressly exempted from review under the Judicial Review of Administrative Decisions Act, A.R.S. § 12–901 et seq., the A.D.C. Act is unconstitutional, citing Bennett v. Arizona State Board of Public Welfare, 95 Ariz. 170, 388 P.2d 166 (1963).

We do not find Bennett to be controlling. In Bennett the Arizona Supreme Court commented upon the unavailability of judicial review of decisions of the State Department of Welfare in relation to the denial of a license to operate a child's care nursery but expressly limited its holding to the failure to afford an applicant a hearing. The Arizona Supreme Court there held:

"It is unnecessary to determine whether the requirements of due process would have been satisfied without a hearing by the State Board if petitioner were given a de novo judicial review. Cf. Columbia Auto Loan v. Jordan, 90 U.S.App.D.C. 222, 196 F.2d 568. It is enough to say that petitioner had neither an opportunity for a hearing at the administrative level nor for a hearing in a court of law. Chapter 85 is fatally defective as a plain denial of due process of law."

We deem the present contention governed by the recent case of Allen v. Graham, 8 Ariz.App. 336, 446 P.2d 240, decided by this Court on 23 October, 1968. In Allen the Court was confronted with the same argument as presented in this instance. The Court sustained the constitutionality of Arizona's Old Age Assistance Act holding, among other things, that:

"An applicant for assistance is afforded a 'right' of review within the administrative hierarchy. A.R.S. § 46–205, 15 A.R.S., as amended."

The judgment is reversed.

DONOFRIO, C. J., concurs.

ROBERT H. McGHEE, Judge of the Superior Court (specially concurring).

I would reverse the judgment, but for a different reason. The Welfare Department in its notice of suspension of payments gave the reason that, "Mr. Antonio Valenzuela was found living in the house." The State Welfare Department, by Regulation 3–403 (6) (D) provided as follows: "The Employable Unrelated Adult Male In The Home. When an employable unrelated adult male is known to be living in an ADC household and it is apparent he is acting as head of the household, the grant will be discontinued on the basis the children are no longer deprived of parental support. The grant will not be reinstated until 'deprivation of parental support' as an eligibility factor is again established and verified. When the caseworker establishes the presence of an unrelated adult male in the home of an ADC applicant or recipient, and as the result rejects the application or discontinues an active case, and the person whose application was rejected or grant discontinued makes a new application or requests reinstatement, on the basis the unrelated adult male is no longer in the home, the new investigation of deprivation of parental support must determine without doubt the man in question has removed himself completely from the household * * *"

The United States Supreme Court in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) had before it a similar regulation of the Alabama Department of Pensions and Security. The three-judge District Court found the regu-

lation to be inconsistent with both the Social Security Act and the Equal Protection Clause. Smith v. King, 277 F.Supp. 31 (D.C.M.D.Ala.1967). The Supreme Court affirmed without reaching the constitutional issue, although one judge, Justice Douglas, in a concurring opinion argued for the constitutional issue as set forth in the opinion of the three-judge District Court. In this particular case I feel that we should be no less hesitant in pioneering a new route through the eddies and undercurrents of the uncertain waters of constitutional law. This Court is bound by the United States Supreme Court's construction of the Social Security Act, and for that reason the decision of the Superior Court should be reversed.

Appellant contends that since the regulations of the Welfare Department do not require a hearing prior to termination of benefits she has been deprived of her benefits without due process of law. The majority opinion agrees that to so deprive her without a prior hearing would be unconstitutional, but construes the statutes in question as requiring a prior hearing. Reliance is placed upon the cases cited, and particularly Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963).

Before considering Schecter we should first consider the nature of the interest of the State in the collection and expenditure of its revenue. The constitutionality of summary administrative procedures in collection of revenue has been the subject of cases before both the United States Supreme Court and the Arizona Supreme Court.

In Smotkin v. Peterson, 73 Ariz. 1, 236 P.2d 743 (1951), the Arizona Supreme Court cited with approval from Washington Nat. Bank v. Daily, 166 Ind. 631, 77 N.E. 53, 55, as follows: "* * * it is well to bear in mind that it is agreed on all hands that the power to tax is an attribute of sovereignty, and prerogative of the State that is indispensably necessary, not only to the public welfare, but to the maintenance of the government, and therefore

yields to no limitation and no restriction by courts beyond what the people themselves have set up in the fundamental law." The Court further cited with approval from State ex rel. Lane v. Superior Court, etc., 72 Ariz. 388, 236 P.2d 461, 463 as follows: "If there is some semblance of authority for the imposition of such tax, plaintiff's remedy is to pay the tax under protest, then test its validity by suing for recovery of the amount so paid * * *" and held that this furnishes him an adequate remedy at law and does not violate the due process clause of either the State or Federal Constitution.

Justice Brandeis in Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, at 595, 51 S.Ct. 608, at 611, 75 L.Ed. 1289, stated: "The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled. Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained."

Although the above cases deal with revenues, the underlying reasons of maintenance of the government and the public welfare should be just as applicable to expenditures. Due process should be accorded by subsequent review in one case just as logically as in the other. The State should have as much right to conserve its revenues as to levy them. The old adage that "a dollar saved is a dollar earned" should be as applicable to the government as to the private individual.

I do not contend that the Welfare Department should be arbitrary and in a routine manner cut off recipients from needed assistance without prior notice if there is sufficient time for a fair hearing prior to the time of the next scheduled payment. If there is a laxity on the part of the State Department of Public Welfare in providing well-defined procedures for an expeditious hearing, either the Department or the Legislature might better serve the public

interest by improving those procedures. On the other hand, I do not feel that this Court should by judicial edict place the Department in the position of not being able to suspend payment when they have knowledge that an illegal payment is about to be made. And in this respect, we should note that this decision will affect not only the A.D.C. program, but also Old Age Assistance, Aid to Needy Blind, and General Assistance programs as well.

Schecter, in discussing the right of an administrative agency to suspend a driver's license without a prior hearing, states the test to be the determination of whether or not there is a "compelling public interest" demanding immediate action. The Court determined that the use of the highways by the driver was in the nature of a right and not a privilege, and that there was no "compelling public interest" requiring that an uninsured driver surrender, prior to a hearing, his license if he did not post security.

I would agree that regardless of whether the receiving of A.D.C. is a right or a privilege, it should not be terminated without procedural due process. If the "compelling public interest" test is applicable, we should consider that the State has a "compelling public interest" in protecting the tax dollars levied to sustain welfare payments. As a practical matter it is unlikely that money can be recovered from welfare recipients who have improperly received money while waiting a prior hearing.

In view of the ever present shortage of money for welfare purposes it would seem that the State has a "compelling public interest" in conserving tax dollars to aid as many deserving persons in need as possible.

The question then arises as to whether the statute requires a prior hearing. In Schecter the statement is made that "where differing constructions are possible, it is our duty to construe it in such a manner that it will be constitutional," citing State v. A. J. Bayless Markets, Inc., 86 Ariz. 193,

342 P.2d 1088 (1959). The actual statement in that case was that "* * * courts should give a sensible construction to statutes and uphold them if possible * * *." In construction of statutes a cardinal rule is to ascertain and give effect to the intention of the Legislature. Phoenix Title & Trust Company v. Burns, 96 Ariz. 332, 395 P.2d 532 (1964). While (1) courts are not controlled by the literal language of a statute if this leads to an absurdity and (2) the spirit of the law prevails, (City of Phoenix v. Superior Court, etc., 101 Ariz. 265, 419 P.2d 49) if the language is plain or unambiguous, courts should observe the obvious and natural import of the language used. Ernst v. Collins, 81 Ariz. 178, 302 P.2d 941 (1956). Words of a statute should be given their ordinary meaning unless it appears from their context that a different meaning is intended. State v. Miller, 100 Ariz. 288, 413 P.2d 757 (1966). A.R.S. § 1–213 provides that "words and phrases shall be construed according to the common and approved use of the language. Technical words and phrases and those which have acquired a peculiar and appropriate meaning in the law shall be construed according to such peculiar and appropriate meaning." If there is no ambiguity in the statute, and the language used does not lead to an impossibility or an absurdity, there is no occasion to resort to rules of statutory construction. City of Mesa v. Killingsworth, 96 Ariz. 290, 394 P.2d 410 (1964); Marquez v. Rapid Harvest Co., 89 Ariz. 62, 358 P.2d 168 (1960).

In applying the above rules we should first ascertain the natural meaning of the language used and see if there is any ambiguity, and if any impossibility or absurdity results from applying their natural or ordinary meaning, when considered along with the spirit of the statute.

The language in A.R.S. § 46–204, subsec. B, at issue is: "when an application *is rejected* wholly or in part, or when modification *is made*, written notice shall be given to the applicant. Such notice shall inform the applicant or recipient of the right to a hearing on the rejection or modification."

(Emphasis added). The statute does not say that "when it is proposed to reject," or that "when a modification is proposed" notice shall be given. Certainly the words "when an application is rejected" speak in terms of an accomplished fact. If there should be any ambiguity in the expression "when modification is made," the maxim "noscitur a socius" should be applicable. "Associated words explain and limit each other. When a word used in a statute is ambiguous or vague, its meaning may be made clear and specific by considering the company in which it is found and the meaning of the terms which are associated with it." Black on Interpretation of Laws, 2nd, as quoted in Southern Pacific Co. v. Corporation Commission, 39 Ariz. 1, 3 P.2d 518 (1931); also see City of Phoenix v. Yates, 69 Ariz. 68, 208 P.2d 1147 (1949).

Sec. 46–204 should be considered in pari materia with Sec. 46–211 if there is any ambiguity. Home Owners' Loan Corporation v. City of Phoenix, 51 Ariz. 455, 77 P.2d 818 (1938). Section 46–211, subsec. A, among other things, provides that, "The department may *at any time* cancel and revoke assistance or service for cause, and it may for cause suspend assistance or service for such period as it deems proper." (Emphasis added). It is further provided that the Department may after investigation change the amount of service "as the department deems necessary." If the Legislature had intended a prior hearing for change or termination of benefits, it seems unlikely that the words "at any time" and "as it deems proper" would have been used instead of language making such changes or termination contingent upon a prior hearing.

The provision of A.R.S. § 46–211, subsec. B providing that all decisions "shall be subject to review" should be considered in its ordinary use and meaning. A.R.S. § 1–213. The term "review" in its ordinary use and meaning has reference to the general appellate process, "* * * and which produces, or results in, the affirmance, modification, setting aside, or reversal of a judgment or *final order*." (Emphasis add-

ed). State v. Dodge, 10 Ohio App.2d 92, 226 N.E.2d 156, 162; Western Drug of Great Falls v. Gosman, 141 Mont. 8, 374 P.2d 507, 510; Pavick v. Glen Alden Coal Co., 140 Pa.Super. 165, 14 A.2d 161, 163. There is no implication in the statute that it deals with an administrative process which must be reviewed before becoming effective.

Emphasis is added to the above view when the welfare statutes are considered in light of the Administrative Procedure Act which required a prior hearing when first adopted, but which was promptly amended one year later to exempt the State Department of Public Welfare from the provisions of the Act.

Section 12–901(2) of the Administrative Procedure Act provides that in all cases when a statute or rule provides for, or permits an application for a rehearing, or other method of administrative review, the decision is not final until the decision on review is rendered. This section remains the same as originally passed. Sec. 2, Ch. 101, 1954.

Section 12–902 as originally passed, Sec. 3, Ch. 101, 1954, provided for the application of the Act to every action to review, except when a different procedure was specifically provided for. However, on March 12, 1955, the Act was amended. (House Bill No. 127, Ch. 30, 1955, Session Laws of Arizona) to exempt, of all the administrative departments, only the State Department of Public Welfare from its provisions. The provisions of §§ 46–204 and 46–211 of the welfare law remain in substantially the same form as originally passed in 1948. Ch. 20, L.1948, 7th S.S. In 1954 the Department's decision became subject to the administrative Procedure Act, only to be exempted one year later. If the Legislature had intended to provide for prior review of the administrative decisions of the Department when removing the Department from the provisions of the Administrative Procedure Act in 1955, it should seem that it would have made some provision for this.

There is a presumption that the Legislature by statutory amendments intends to make a change in existing law, and that in dealing with separate statutes the Court should construe them so as to give meaning to both, if possible. Finch v. State Department of Public Welfare, 80 Ariz. 226, 229, 295 P.2d 846 (1956). One of the most substantial rights extended to a person seeking a review under the Administrative Procedure Act is the fact that, "* * * no administrative decision of such agency is final as to the party applying therefore until the rehearing or review is denied, or the decision on rehearing or review is rendered." A.R.S. § 12–901(2). The Legislature must be presumed to have been aware of this at the time it removed the Welfare Department from provisions of the Act.

Therefore, I conclude that there is no ambiguity in the language used requiring the use of rules of construction. The language in its context and in its common use is in accord with the spirit of the law. It leads to no absurdities. The words of the statute in their ordinary use result in a constitutional enactment, and therefore there is no issue of an ambiguity requiring a construction of the statute to preserve its constitutionality.

Appellant argues that there is a denial of due process since there is no right of appeal to the courts provided in the welfare law. In addition to the reasoning of the majority, I would point out that this view has not been accepted by the United States Supreme Court, which in Application of Gault, 387 U.S. 1, 87 S.Ct. 1428, 1459, 1460, 18 L.Ed.2d 527, stated: "This Court has not held that a State is required by the Federal Constitution 'to provide appellate courts or a right to appellate review.'" See Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

I would reverse, but on the ground that the man-in-the-house regulation of the State Department of Welfare did not comply with the Social Security Act, as set out in King v. Smith, supra.

NOTE: Judge JAMES DUKE CAMERON having requested that he be relieved from consideration of this matter, Judge ROBERT E. McGHEE of the Superior Court was called to sit in his stead and participate in the determination of this cause.